REX INSURANCE COMPANY *v.* MYRTLE BALDWIN.

[No. 1-974A142. Filed February 27, 1975.]

*John W. Worth, Clarkson & Worth,* of Rushville, for appellant.

*Arvin R. Foland, Foland & Caldwell,* of Noblesville, for appellee.

LOWDERMILK, J.—Rufus Herbert Baldwin purchased a policy of insurance on his life from defendant-appellant, Rex Insurance Company (Rex), naming Myrtle Baldwin, his wife, beneficiary therein.

The policy was purchased on July 20, 1970. Rufus Herbert Baldwin died on November 25, 1972, and at the time of his death the policy issued by Rex was in full force and effect and all premiums accrued thereon were fully paid.

Plaintiff-appellee, Myrtle Baldwin, gave Rex notice and proof of death of the insured and demanded payment of the full liability of the policy, which was $1,000.00.

Rex made no move to make payment under its policy and Myrtle went to the Indiana Insurance Commissioner, after which liability was denied by Rex, which then tendered back

to Myrtle the premiums paid in the amount of $332.80 which she declined.

Rex, after review by the claim committee, denied liability under its policy, although the incontestable period of the policy of two years had expired some four months before Mr. Baldwin's death. Rex gave as the reason for the non-payment that Mr. Baldwin received sick benefits from Delco Remy for hypertension; that there had been a court order for the discontinuance of support payments to children of a former marriage of Mr. Baldwin because of his bad health, all prior to the application for the policy.

Rex demanded that the appellee bring litigation in order to collect the $1,000.00.

Mr. Mingus Browder, manager of the Accounting Department and Death Claims Department, testified that after claim was made under the policy they determined that Mr. Baldwin, in response to the questionnaire as to any disease or illness given by him at the time the policy was written, had answered "No" and that the rejection could have been made on that basis alone.

Mr. Browder testified he was familiar with the incontestable clause in Rex's policy. Browder was generally familiar with Rex's policy provisions and the law pertaining to incontestable periods of life insurance. He further testified that the only exception contained in the Rex policy was for nonpayment of premium and additional loss, as set out in paragraph 18 of the policy, which paragraph is not pertinent to the issues before us.

The complaint alleged Rex's failure to pay said policy was in wanton and willful disregard and completely unfounded and was done maliciously and, in effect, that Rex demanded litigation be brought in order for the plaintiff to receive the funds under this policy. The complaint asked for punitive damages.

Myrtle testified that she had expended over $1,000.00 in order to pursue collection of the policy and had worried about the problems until she had become ill.

A bench trial was had, at the conclusion of which the trial court found for the plaintiff and granted her judgment in the cause of action sued on in the sum of $1,000.00 and further adjudged that plaintiff recover from the defendant the sum of $2,500.00 as punitive damages.

Pursuant to Ind. Rules of Procedure, Appellate Rule 8.3(A) (7) appellant has grouped specifications 1, 2, 4, and 5 of its motion to correct errors into one argument and the same will be treated in this opinion as one.

These specifications are: (1) that punitive or exemplary damages are not recoverable in a breach of contract action and are contrary to law in the instant case; (2) the court's overruling defendant's motion to dismiss punitive damages at the conclusion of plaintiff's case was error; (4) the court erred in granting $2,500.00 punitive damages and $1,000.00 actual damages by its judgment; and (5) damages awarded were excessive.

This case was pleaded and presented as a claim for money damages for breach of an insurance contract. Rex contends that Mr. Baldwin, the insured, was under medical disability at the time he made an application to the company and indicated that he was in good health. Further, the matter was discussed with the Insurance Commissioner by Myrtle Baldwin, which Rex contends presented a good faith question as to whether or not fraud had been committed at the inception of the contract. Rex further contends that from the evidence the conduct of the defendant was not in any manner malicious or oppressive and formed no basis for awarding punitive damages; that no punitive damages could be awarded without a specific finding of fraud made by the court before an award of punitive damages would have been justified.

IC 27-1-12-6, Ind. Stat. Ann. § 39-4206a (Burns 1965), reads, in pertinent part, as follows:

"(3) That the policy, together with the application therefor, a copy of which application shall be attached to the policy and made a part thereof, shall constitute the entire contract between the parties and shall be incontesta-

ble after it shall have been in force during the lifetime of the insured for two [2] years from its date, or, at the option of the company after it shall have been in force for two [2] years from its date, except for nonpayment of premiums, . . ."

It is undisputed that the policy sued on was beyond the incontestable clause and that it was necessary that the suit be filed in order for Myrtle, the beneficiary, to recover on her decedent's policy.

Appellant Rex vigorously urges that the law does not recognize recovery of punitive damages in a breach of contract action. Rex relies for its authority principally on *Standard Land Corp. of Ind.* v. *Bogardus* (1972), 154 Ind. App. 283, 289 N.E.2d 803, and *Meridian Mutual Ins. Co.* v. *McMullen* (1972), 152 Ind. App. 141, 282 N.E.2d 558.

In *Standard Land, supra,* in the trial court's special findings of fact no fraud was found although it was found that the contract "imports oppression" and there was a "spirit of wanton disregard for the rights of Macke." This court therein determined that as the trial court did not find fraud and did not find additional facts which required it in the interests of justice to grant punitive damages, that the plaintiff was not entitled to exemplary damages.

In *Meridian Mutual, supra,* a fire insurance policy was involved and the action was in two paragraphs, with the second being for punitive damages for harassment and bother caused by the company's refusal to pay. Again, this court determined that in Indiana punitive damages are not permitted in breach of contract situations and in that case the plaintiff had not shown sufficient malice on the part of the insurance company to make a separate tort in addition to the breach of the insurance contract.

In *Meridian Mutual,* this court, in quoting from the case of *Miller, et al.* v. *Long* (1955), 126 Ind. App. 482, 131 N.E.2d 348, 132 N.E.2d 272, stated:

". . . 'Special damages are such as *actually* result from the wrong done but which do not *necessarily* result therefrom,

and for that reason are not implied by law, and to be recovered must be specially alleged and proven.' (Our emphasis.). . ." 282 N.E.2d 558 at 563.

Appellee urges with equal vigor that a fraud was perpetrated by Rex which entitled Myrtle to the award granted her by the trial court. In support of her position Myrtle cites the case of *Physicians Mutual Insurance Company* v. *Savage* (1973), 156 Ind. App. 283, 296 N.E.2d 165, in which case the representative of the insurance carrier misrepresented the terms of the policy by exhibiting to the plaintiff-executor a **rider which was different** from that actually attached to the policy. This act of the representative was determined by the trial court to be a fraud knowingly perpetrated upon the plaintiff-executor.

Exemplary damages were awarded therein for the fraud.

The case at bar is distinguishable from *Physicians Mutual, supra,* in that the plaintiff-appellee did not allege fraud.

In the case at bar plaintiff-appellee alleged that the failure of Rex to pay said policy is wanton and willful disregard and completely unfounded and is done maliciously and, in effect, demanding that litigation be brought in order for the plaintiiff to receive the funds under this policy, to her damage in the sum of $5,000.00.

This court, in *Capitol Dodge, Inc.* v. *Haley* (1972), 154 Ind. App. 1, 288 N.E.2d 766, cited *Jones* v. *Hernandez* (1970), 148 Ind. App. 17, 263 N.E.2d 759, 763, as follows:

"In Indiana punitive damages are proper where the acts of the wrongdoer are such as to indicate heedless disregard of the consequences."

In *Murphy Auto Sales, Inc., et al.* v. *Coomer, et al.* (1953), 123 Ind. App. 709, 112 N.E.2d 589, the court said that punitive damages were proper because of the aggravated circumstances.

We have heretofore stated that Rex demanded that appellee bring litigation in order to collect the $1,000.00. Mr. Browder, the manager and a director of Rex, testified that the Insur-

ance Commissioner could not force Rex to pay the proceeds to Myrtle. He was well versed on insurance law and knew that Rex had no right to contest the claim for any reason except as specifically contained in the incontestability clause of its policy issued to Mr. Baldwin.

Our Supreme Court, in speaking on the general issue of fraud in the case of *Indiana Nat'l Life Ins. Co.* v. *McGinnis* (1913), 180 Ind. 9, 16, 101 N.E.2d 289, said:

". . . It seems to be a well recognized principle of insurance law that a provision in a contract of insurance limiting the time in which the insurer may take advantage of certain facts that might otherwise constitute a good defense to its liability on such contract, is valid and precludes every defense to the policy other than the defenses excepted in the provision itself. It also seems to be generally held that such a clause precludes the defense of fraud, as well as other defenses, and that it is not invalid on the theory that it is against public policy, provided the time in which the defenses must be made is not unreasonably short. An examination of the following cases will show that the holding of the courts of this country has been, almost universally, *that every defense to a policy of insurance embraced within the terms of the 'incontestable clause' is completely lost to the insurer if it fails to make the defense or takes affirmative action within the time limited by the policy. . . .*" (Our emphasis.) See also *Columbian Nat'l Life Ins. Co.* v. *Wallerstein* (1937), 91 F.2d 351.

The most recent case on this subject is *Vernon Fire & Casualty Insurance Co.* v. *Sharp* (1974), 161 Ind. App. 413, 316 N.E.2d 381. In this case the award of punitive damages was discussed. On this, the court said:

". . . The jury also heard evidence from which they could find that the policy provisions were so clear that the insurers could not dispute the amount of liability in good faith.

We are of the opinion the evidence was sufficient to allow the jury to find that the insurer's conduct amounted to heedless disregard of the consequences, malice, gross fraud or oppressive conduct." 316 N.E.2d at 384.

We are of the opinion that the record before us reveals evidence that the policy provisions were sufficiently clear that Rex could not dispute the amount of liability in good

faith; we are of the further opinion that from such evidence the trial court could reasonably infer the existence of heedless disregard of the consequences, malice, oppressive conduct and injury.

The trial court could reasonably have believed that Mr. Browder had a superior knowledge of the laws of life insurance and the applicability thereof to Mr. Baldwin's policy when he denied liability and instructed Myrtle to file suit if she expected to recover.

This type of damages is not completely compensatory in character but serves to deter wrongdoing. *Murphy Auto Sales, supra.* We cannot weigh the evidence nor second guess the trial court, but it is our opinion in view of the evidence of loss and expense sustained by appellee, Myrtle, in this action that the trial judge did not abuse his discretion and the amount of punitive damages awarded was not excessive.

Judgment affirmed.

Robertson, C.J., and Lybrook, J., concur.