Fred J. CRAFT, Irene Craft, and Joanne Craft, Plaintiffs-Appellants,

v.

ECONOMY FIRE & CASUALTY COMPANY, Defendant-Appellee.

No. 77–1683.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 7, 1977.

Decided Feb. 24, 1978.

Alexander Lysohir, South Bend, Ind., for plaintiffs-appellants.

William J. Reinke, Lawrence C. DiNardo, South Bend, Ind., for defendant-appellee.

Before CASTLE, Senior Circuit Judge, WOOD, Circuit Judge, and WYZANSKI, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

The question presented on appeal is whether the district court properly granted defendant-appellee's motion for a summary judgment in a diversity action alleging tortious breach of contract by an insurance company in handling a claim by plaintiff-appellant under the uninsured motorist provisions of an automobile insurance policy. We reverse.

On July 14, 1973 Economy Fire & Casualty Company (Economy) issued an automobile insurance policy to Fred Craft for a one year period ending July 14, 1974. Under Part IV of the policy, Economy agreed to pay certain sums to Craft in the event that a member of the Craft family should become legally entitled to recover damages for bodily injuries caused by an accident involving an uninsured motorist. On August 31, 1973 Joanne Craft, the 11 year old daughter of the Crafts, was struck by an automobile while riding her bicycle on the side of a road. The automobile was driven by Michael Stanchin, who was intoxicated at the time and subsequently found guilty in an Indiana state court of driving under the influence. The accident resulted in severe bodily injuries to Joanne Craft. Stanchin was not insured at the time.

On September 21, 1973 the Crafts' attorney, Alexander Lysohir, notified Economy that the Crafts intended to make a claim under the uninsured motorist provisions of their policy based on the August 31 accident. Lysohir subsequently filed a formal notice of claim and requested that all contacts with the Crafts be made through his office. Economy responded by letter dated October 13, 1973 stating that adjuster Dan Williams would be handling the matter for Economy and requesting the submission of medical reports, a list of medical expenses, and any other information relating to the claim. Medical bills, totaling $8,486.88, were submitted in January, February and May of 1974. Economy received a medical report in February and did an activities check on Joanne's status in April. Economy also received a copy of the police accident report.

In February, 1974 Williams requested an opportunity to interview Joanne Craft regarding the circumstances surrounding the accident. Lysohir declined to allow the interview, but agreed that a series of written questions could be submitted for Joanne to answer. Economy provided such a list on February 28, 1974 and on March 14 Lysohir gave Economy a copy of Joanne's signed statement in response. On May 16, Williams interviewed Joanne's biking companion at the time of the accident, Miss Golichowski, who mentioned that a man from another insurance company had talked to her.

As early as February, 1974 Lysohir demanded that Economy pay the full $15,000 policy limits and repeated that demand in May of that year. At the outset Economy placed a $4,500 reserve on the Craft claim, which was increased to $14,500 on February 26, 1974. On several occasions Williams asked his superiors for authority to settle the claim for the full policy limits. Instead, only a $10,000 settlement offer was authorized, which was promptly rejected by the Crafts. On July 3, 1974 Lysohir sent Economy a letter which stated that creditors were hounding the Crafts for medical bills

---

* The Hon. Charles E. Wyzanski, Jr., Senior District Judge of the District of Massachusetts, is sitting by designation.

causing Mrs. Craft considerable anxiety and embarrassment and which threatened litigation unless the policy limits were paid by July 15, 1974. Because of vacations, the letter was not read by anyone at Economy until July 22, three days after the Crafts had already filed this suit for tortious breach of contract. On July 22, Jesse Black, Williams' supervisor, telephoned Lysohir and explained that he would obtain settlement authority for the full policy limits in exchange for all claims, including dismissal of the present suit. The offer was refused. Economy then filed an answer in the district court and took depositions from Joanne and Fred Craft. Following those depositions, Economy filed a petition with the court admitting liability on the uninsured motorist claim and deposited the $15,000 policy limits into court. In addition, Economy paid in $2,000 under the medical payment provisions, even though no claim had been made under them.

Shortly after filing the present suit in federal district court, Craft filed a suit in state court against the uninsured motorist, Stanchin. No notice of the suit was given to Economy, who found out about it indirectly in December of 1975. Economy took no action with respect to the state court suit until September 2, 1976 when it successfully sought leave to intervene as a defendant following the decision of the Indiana Court of Appeals in *Vernon Fire & Casualty Insurance Co. v. Matney*, 351 N.E.2d 60 (1976). Economy states that the reason for its intervention was to avoid being bound in the present suit by a state court judgment on the issue of its liability under the insurance contract. On December 16, 1976 during a pretrial conference in the district court, Lysohir agreed not to attempt to bring the results of the state court proceeding into federal court. Accordingly, after an order was obtained from the district judge formalizing this result, on February 11, 1977 Economy obtained permission from the state court to withdraw. On April 26, 1977 the district court granted Economy's motion for summary judgment. Appeal was taken to this court pursuant to 28 U.S.C. § 1291.

The question before this court under Rule 56 of the Federal Rules of Civil Procedure is whether the court below was correct in finding that there is no genuine issue as to any material fact and that Economy is entitled to a judgment as a matter of law. Craft attacks both the findings of fact and conclusions of law upon which the ruling of the lower court was based.

The key question of law presented is whether under Indiana law [1] there is an implied covenant in automobile insurance policies that the insurance company will handle claims under the uninsured motorist coverage of the policies fairly and in good faith. Since it appears that this precise question has not been decided by the Indiana courts, we must approach the problem indirectly. We begin our inquiry with the observation that Indiana law has recognized the existence of an implied duty of good faith and fair dealing with regard to other types of insurance coverage. *Vernon Fire & Casualty Insurance Co. v. Sharp*, 349 N.E.2d 173 (Ind.Sup.Ct.1976) (Fire insurance); *Rex Insurance Co. v. Baldwin*, 323 N.E.2d 270 (Ind.App.1975) (Life insurance); *Sexton v. Meridian Mutual Insurance Co.*, 337 N.E.2d 527 (Ind.App.1975) (Fire insurance). Economy, however, suggests that uninsured motorist coverage presents a situation materially different from those other types of insurance. They argue that the uninsured motorist policy provides for substituted liability whereby the insurer takes the place of the uninsured motorist, thus creating an adversary relationship which is inconsistent with the existence of an implied duty of good faith and fair dealing.

Unlike the Indiana courts, the courts of Florida and California have dealt directly with this question, but with differing results. In *Richardson v. Employer's Liability Assurance Corp.*, 25 Cal.App.3d 232, 102

---

1. This is a diversity action which was brought in the Northern District of Indiana. It is not disputed that Indiana law applies.

Cal.Rptr. 547 (1972), the California Court of Appeals for the Second District found that a duty of good faith is implied in law with respect to uninsured motorist coverage based on "[a] reasonable expectation of the insured under such protection . . . that his claim will be handled by the insurer promptly, fairly and in good faith." 25 Cal.App.3d at 244, 102 Cal.Rptr. at 556. On the other hand, the Florida First District Court of Appeals, by a closely split decision in *Baxter v. Royal Indemnity Co.,* 285 So.2d 652 (Fla.App.1973), concluded that where the insurance policy provided that the parties could resort to arbitration if they could not agree on a claim under the uninsured motorist coverage, it "would appear immaterial whether . . . [the insurer's decision to demand arbitration] . . . was motivated by good faith, bad faith, self-interest, malice, spite, or indifference." 285 So.2d at 656.[2] We believe that the Indiana courts are more likely to follow *Richardson* than *Baxter.*

The insurance policy here in question makes the insurer liable to its insured for damages which the insured becomes legally entitled to recover from an uninsured motorist. There is also a provision stating that the "determination as to whether the insured . . . is legally entitled to recover such damages, and if so, the amount thereof shall be made by agreement between the insured . . . and the company, or, if they fail to agree, by arbitration." (Part IV, Coverage). We conclude that there is nothing inherent in the nature of uninsured motorist protection that is inconsistent with a requirement that the insurance company attempt in good faith to reach agreement with its insured and that any attempt to force the insured to settle for less than his claim be predicated on a bona fide dispute as to the amount of liability. In reaching this conclusion we concur both with the court in *Richardson* and with the author of what one Indiana court has termed the "definitive treatise" in this field [3]—*Widriss, A Guide to Uninsured Motorist Coverage*—the 1976 supplement to which states:

> It seems at this juncture that a standard of conduct for the insurer predicated on requiring the company to deal with its insured in good faith is the appropriate one for claims under uninsured motorist coverage.
>
> (Section 2.56a, pp. 119–20).

We note also, by way of analogy, the pervasive duty of "good faith" found in Section 1–203 of the Uniform Commercial Code. "Good faith" is defined by Section 1–201 of the U.C.C. as "honesty in fact in the conduct or transaction concerned."

Economy's theory that the existence of a good faith duty is totally incompatible with the substituted liability nature of uninsured motorist coverage and the consequent adversary relationship between insurer and insured is not convincing. Uninsured motorist coverage represents substituted liability only in the sense that a determination that the uninsured motorist is legally liable to the insured is a condition precedent to the obligation of the insurer to pay off on the policy. In this determination the insurer stands in the shoes of the uninsured motorist with regard to the question of whether the latter was negligent and with regard to his defenses such as contributory negligence. This does not make the insurance company an insurer *in fact* of the uninsured motorist. Their relationship is not characterized by the rights and duties normally incident to the relationship between an insured and his insurer under a third party liability policy. Moreover, it does not make the insurer a stranger to its insured. After all, the insured is the one who pays the premiums for the uninsured motorist protection and the "reasonable expectation" that he will be dealt with fairly

---

2. *Accord, Lyon v. Hartford Accident and Indemnity Co.,* 25 Utah 2d 310, 480 P.2d 739 (1971).

3. The "definitive treatise" characterization is found in *Indiana Insurance Co. v. Noble,* 148 Ind.App. 297, 265 N.E.2d 419, 431 (1970).

and in good faith by his insurer is still present.[4]

We do agree with the defendant's argument that the fact that the insurance company and its insured hold adverse positions on the issue of liability differentiates uninsured motorist insurance from third party liability insurance with respect to the existence of a fiduciary duty owed the insured by the insurer. But it does not materially distinguish uninsured motorist insurance from first party insurance with respect to the existence of a duty on the part of the insurer to handle the insured's claim fairly and in good faith. Under third party liability coverage, when the insured is sued by a third party, the insurance company takes over the defense of the suit and the insured cannot settle the matter without the permission of the insurer. It is this control of the litigation by the insurer coupled with differing levels of exposure to economic loss which gives rise to the "fiduciary" nature of the insurer's duty. See *Crisci v. Security Co. of New Haven, Conn.,* 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967). In the uninsured motorist situation there is no element of "control" of the insured's side of the litigation by the insurance company which would give rise to a "fiduciary" duty. It does not necessarily follow that the insurer is completely free of any obligation of good faith and fair dealing to its insured, since the latter duty is based on the reasonable expectations of the insured and the unequal bargaining positions of the contractants, rather than the insurance company's "control" of the litigation. See *Richardson v. Employer's Liability Assurance Corp.,* 25 Cal.App.3d 232, 102 Cal.Rptr. 547 (1972). In this respect the uninsured motorist situation is similar to that in first party insurance. Under coverage of this type, such as fire insurance, collision insurance, etc., Indi-

ana law has recognized the existence of a good faith duty, in spite of the absence of factors which might give rise to a duty more "fiduciary" in nature. *Vernon Fire & Casualty Insurance Co. v. Sharp,* 349 N.E.2d 173 (Ind.Sup.Ct.1976); *Sexton v. Meridian Mutual Insurance Co.,* 337 N.E.2d 527 (Ind. App.1975); *Rex Insurance Co. v. Baldwin,* 323 N.E.2d 270 (Ind.App.1975). In this respect Indiana law appears to disagree with Florida law. For in *Baxter* the Florida appeals court stated that even in a claim under collision insurance (which is a first party type coverage), the parties are in contractually adverse positions and there is no duty of good faith and fair dealing, at least not of such a nature that would make the insurer liable for "compensatory and punitive damages." [5] 285 So.2d at 657.

In support of its argument that the Indiana courts have recognized the existence of an adversary relationship in uninsured motorist claims which is inconsistent with the existence of a duty of good faith, Economy cites two Indiana cases dealing with the issue of intervention of the insurer in a suit by the insured against the uninsured motorist. *Indiana Insurance Co. v. Noble,* 148 Ind.App. 297, 265 N.E.2d 419 (1970); *Vernon Fire & Casualty Insurance Co. v. Matney,* 351 N.E.2d 60 (Ind.App.1976). Those cases held that where the insured institutes litigation against the uninsured motorist, the insurance company has a right to intervene on the side of the latter. Furthermore, where the insurer has received notice of the suit and has had an opportunity to intervene, it will be bound by the result of the suit on the issues of the uninsured motorist's liability and the amount of damages, regardless of whether the insurer intervened in fact or not. These cases do not necessarily support the conclusion that there is a complete absence of a duty of

---

4. Economy also emphasizes the fact that insurance companies are required by statute to offer uninsured motorist protection in automobile liability policies. Economy does not explain how this fact is relevant to the issue of whether there is an implied duty of good faith and fair dealing with respect to that coverage.

5. Somewhat inconsistently, although the Court in *Baxter* found no duty the breach of which would give rise to compensatory and punitive damages, it did state that the insured might be entitled to recover interest for any unreasonable delay on the part of the insurance company. See also, *Midwest Mutual Ins. Co. v. Brasecker,* 311 So.2d 817, 818 (Fla.App.1975).

good faith and fair dealing in uninsured motorist situations. Nor do they establish that the insurer is entitled to a "judicial" determination of the uninsured motorist's liability, even where the issue cannot be disputed in good faith.[6] On the contrary, the hesitancy of the court in *Matney* to permit intervention because of the potential conflict of interest between insured and insurer suggests that any relaxation of the general duty of good faith and fair dealing due to the substituted liability nature of uninsured motorist coverage be narrowly circumscribed.[7]

Having concluded that an Indiana court would probably recognize the existence of a duty of good faith and fair dealing with respect to an insurer's handling of an uninsured motorist claim, the question becomes whether there were sufficient facts in dispute before the court below to support an allegation of a breach of that duty. But before examining the facts of the present case, a brief survey of some of the cases that have found such a breach in the past should sharpen our focus.

In *Rex Insurance Co. v. Baldwin*, 323 N.E.2d 270 (Ind.App.1975), the widow of an insured made a claim under his life insurance policy. Even though the incontestable period had expired before the death of the insured, the insurance company claimed that the insured had made a material misrepresentation in the application for the policy and stated that the widow would have to sue them to collect. The Indiana court of appeals upheld an award of compensatory and punitive damages, finding that the provisions of the policy were sufficiently clear that the insurer could not dispute the amount of liability in good faith and that the trier of fact could reasonably infer the existence of "heedless disregard of the consequences, malice, oppressive conduct and injury."

*Sexton v. Meridian Mutual Insurance Co.*, 337 N.E.2d 527 (Ind.App.1975), involved a claim by a couple under the fire insurance policy on their house. When a dispute arose as to the amount of loss, the insureds sought to have the matter settled pursuant to a clause in the policy providing that in such disputes each party would get an independent appraiser to appraise the loss and if they could not agree, the differences would be settled by resort to an umpire. The insurance company refused to disclose the appraisal made by its appraiser, despite repeated requests, and also refused to recognize the award of the umpire appointed in accordance with the terms of the clause. Moreover, the insurer persistently maintained that its maximum liability was $5,772.25 even though its own appraiser valued the loss at $15,200.44 and $11,453.87. The Indiana court of appeals found that there was sufficient evidence from which a jury could have reasonably inferred both lack of good faith on the part of the insurer as to the extent of its liability and oppressive conduct. The court therefore found that the issue of punitive damages should have gone to the jury.

In *Vernon Fire & Casualty Insurance Co. v. Sharp*, 349 N.E.2d 173 (Ind. Sup.Ct.1976), the insured was the owner of a business which was destroyed by a fire, for which he filed a claim under his fire insurance policy. The manager of the business also put in a claim for some personal property of his that had been destroyed in the fire. Although the insurance company did not question that the insured was entitled to recover for some of the losses claimed, it refused to pay even those amounts unless the insured first obtained a release of the manager's personal claim, even though there was no requirement in the policy that the insured do so.

6. But see *Lyon v. Hartford Accident and Indemnity Co.*, 25 Utah 2d 311, 480 P.2d 739, 744 (1971). Here, the policy provides that the determination will be made in the first instance by the parties.

7. We need not deal here with the question of whether an insurer who intervenes in a suit against the uninsured motorist because of a good faith doubt as to liability is under a duty to settle with the insured if prior to judgment the doubt becomes resolved in favor of liability. In such a situation, the effects of requiring settlement on the uninsured motorist co-defendant's interests would also have to be considered.

The Indiana Supreme Court upheld an award of compensatory and punitive damages, finding that the insurance company "wrongfully attempted by virtue of their superior position to exact additional consideration from the plaintiff before performing their obligations under the contract."

Lastly, in *Richardson v. Employer's Liability Assurance Corp.*, 25 Cal.App.3d 232, 102 Cal.Rptr. 547 (1972), the insured made a claim for injuries and property damage under the uninsured motorist provisions of his automobile policy. The home office of the company told its local office that the claims should be assumed and paid "only as a last resort" and ordered an investigation into possible defenses to the claims. After investigating, the local office reported that the Richardsons had a valid claim. The home office rejected this conclusion and suggested that the Richardsons be advised that this was not a case involving an uninsured motorist. After the insurer refused repeated settlement demands, the Richardsons invoked the policy's arbitration provisions and won an award for the full policy limits. The insurer persisted in attempting to induce the Richardsons to settle for less than the full amount of their claims until the award was finally judicially confirmed. On these facts, the California appeals court upheld a verdict for compensatory and punitive damages, finding that the insurer had deliberately, willfully and in bad faith withheld payment of the claim months after it knew the claim to be completely valid and had otherwise acted unconscionably.

Viewing the Crafts' allegations in the light of the above cases, we conclude that they state a claim upon which relief might be granted. The Crafts base their request for relief on three separate grounds. Firstly, they allege that Economy attempted to pressure them into settling for less than the fair value of their claims, even though Economy knew or should have known that it was liable for the full amount. Secondly, they allege that Economy attempted to exact additional consideration from them in the form of dismissal of the tortious breach of contract claim before it would pay the uninsured motorist claims. Lastly, they allege that Economy's intervention in the state court suit against the uninsured motorist, after having admitted liability on the policy and having paid the policy limits into court, was malicious and a breach of its duty of fair dealing. We will deal with each of these three allegations in turn.

 In light of the cases examined above, it would appear that under Indiana law an insurer who attempts to force its insured to settle an uninsured motorist claim for less than the amount claimed, although aware that it is liable for the full amount, breaches its duty of good faith. It is certainly a reasonable expectation of the insured that if the insurer has no honest doubts concerning its liability, it will promptly pay over the amount owing. In this respect the Crafts' allegations state a cause of action. Whether the same is true of their alternative allegation wherein breach of duty is predicated not on actual knowledge of liability on the part of Economy, but on the "unreasonableness" of any doubts that might actually have been entertained by the insurer, is unclear. In *Rex* the Indiana court found that the life insurance beneficiary's right to receive the proceeds of the policy was sufficiently clear so that the insurer could not dispute its liability in good faith. Since the court did not make a determination that the insurer actually knew that it was liable, a possible inference is that actual awareness of liability may not be needed if the insurer's doubts are extremely reckless in the circumstances. However, the Crafts would take this approach one step further. They argue that the insurer is under a duty to promptly investigate the facts underlying an uninsured motorist claim and that a breach of its duty of good faith and fair dealing can be found even where the insurer maintains actual, non-reckless doubts as to its liability, if a reasonable investigation would have disclosed information making those doubts untenable. Not only is there no direct Indiana authority supporting such a proposi-

tion,[8] but we believe that in this extreme form the Crafts' contention conflicts with the accepted law that the insured has the burden of showing that the preconditions to the insurance company's obligation to pay have been met. *Couch on Insurance* 2d, § 45.628. However, it does not appear unreasonable to require the insurance company, under the general duty of good faith and fair dealing, to inform the insured of any questions that it has as to liability so that the insured can supply additional proof if necessary.[9]

In the context of the present case the Crafts' second claimed ground for relief—that Economy attempted to "exact additional consideration" from them in the form of dismissal of the tortious breach of contract suit before it would pay the uninsured motorist claim—merely represents an extension of its first allegation. If Economy knew that it was liable for the full policy limits, it was improper for it to attempt to force the Crafts to settle for "less" than that amount by asking them to give up whatever rights they might have in this suit. Conversely, given the interrelationship between the tortious breach of contract claim and the underlying uninsured motorist claim, if Economy disputed its liability on the latter in good faith, there is no reason why it could not make a "package" settlement offer for both claims.[10]

The last breach of duty alleged by the Crafts concerns Economy's intervention in the state court suit against the uninsured motorist. Economy argues that it had a right to intervene, since under *Vernon Fire & Casualty Insurance Co. v. Matney,* 351 N.E.2d 60 (Ind.App.1976) and *Indiana Insurance Co. v. Noble,* 148 Ind.App. 297, 265 N.E.2d 419 (1970), it would be bound in the present suit by a state court verdict with respect to the uninsured motorist's liability and damages. Economy also argues that the Crafts would have been similarly bound by a decision that the uninsured motorist was not liable. In response, the Crafts contend that these issues are no longer in dispute in the present suit since Economy has already admitted liability on the uninsured motorist claim and paid the policy limits into court.[11] Moreover, they point out that under the trust agreement clause of the policy Economy's payment of the policy limits gives it subrogation rights with respect to any recovery by the Crafts in the state court suit, thus aligning the insurance company's interests with those of the plaintiff rather than the defendant. Under the circumstances, there is some doubt that under Indiana law Economy's legal position in the present suit would be altered by any preclusive effects of a judgment in the state court suit. Nor does the record demonstrate how a state court ver-

---

**8.** The only authority cited by the Crafts in support of their position is the dictum of the Nevada Supreme Court in *Allstate Insurance Co. v. Pietrosh,* 85 Nev. 310, 454 P.2d 106, 108 (1968), quoted by the Indiana Court of Appeals in *Indiana Insurance Co. v. Noble,* 148 Ind.App. 297, 265 N.E.2d 419, 435 (1970):

An insurance policy is not an ordinary contract. It is a complex instrument, unilaterally prepared and seldom understood by the insured. The parties are not similarly situated. The company and its representatives are expert in the field; the insured is not. *Prudential Insurance Co. v. Lamme,* 83 Nev. 146, 148, 149, 425 P.2d 346 (1967). For this reason we do not hesitate to place the burden of affirmative action upon the insurance company. *When notified of a claim it should investigate with reasonable dispatch;* demand arbitration if that is its desire and settlement can't be reached; consent to suit against the uninsured motorist when notified of its pendency; or seek leave to intervene and present

its contentions. Multiple litigation is not desirable. In short, the insurance company may not ignore its insured and then seek refuge in the fine print of its policy. (Emphasis added).

**9.** Alternatively, the insurer could undertake its own investigation to resolve any existing doubts.

**10.** In this respect the present case differs from *Vernon Fire & Casualty Insurance Co. v. Sharp, supra,* where the additional claim for which the insurance company sought to have its insured obtain a release was not a claim of the insured, but rather of a third party.

**11.** They also assert that Economy would not be bound since they (the Crafts) did not give Economy notice of the state court suit. It is clear, however, that Economy did have actual notice of the suit.

dict might affect Economy's tactical position in the present suit by some means other than legal preclusion of the issues of Stanchin's liability and damages. However, since the interrelationship under state law between the two suits is unclear in the circumstances of the present case, and since the state court gave Economy permission to intervene, we are reluctant to characterize Economy's intervention as a *per se* breach of its duty of good faith and fair dealing. We believe that in order to make out a breach the Crafts must demonstrate that Economy's intervention was in bad faith, i. e., that Economy's true objective was not to protect its legal position in this suit. Since the Crafts alleged that Economy's intervention was malicious and that the insurance company clearly had no legally protectible interests, we will assume for the present that they have stated a claim on this count.

■ Our next task is to examine the record, including depositions and affidavits, to see if the court below properly concluded that Economy met its burden of showing that there is no genuine issue of material fact. In doing so, we must keep in mind that "cases in which the underlying issue is one of motivation, intent, or some other subjective fact are particularly inappropriate for summary judgment, as are those in which the issues turn on the credibility of the affiants." *Staren v. American National Bank & Trust of Chicago*, 529 F.2d 1257, 1261 (7th Cir. 1976): *Moore's Federal Practice* ¶ 56.17 at 41–1.

Economy's response to the Crafts' allegations of a bad faith attempt to force them to settle for less than the amount to which they were entitled and to exact additional consideration is that it had reasonable doubts concerning its liability on the policy. It states that it questioned whether Joanne Craft might have been contributorily negligent by riding in the wrong direction and on the road rather than the berm. It also states that Miss Golichowski's statement that she had been visited by another insurance man created a doubt as to whether Stanchin was in fact uninsured. In support of these contentions, Economy cited portions of the depositions and affidavits of its employees. It is clear that if these doubts were both actual and reasonable as claimed, Economy cannot be found guilty of bad faith. The Crafts, however, oppose Economy's assertions and make a number of arguments in support of their position: that Economy never communicated any such doubts to the Crafts; that it is unlikely that Economy would have made a $10,000 settlement offer if it had any realistic doubts concerning a fact so simple to verify as whether or not Stanchin was insured; that contributory negligence is not a defense to Stanchin's willful and wanton tort; and that there was evidence of a policy on Economy's part to require a discount on claims settled without litigation, regardless of liability, since the insured would benefit from reduced litigation expenses. Although we are mindful of the fact that under Fed.R. Civ.P. 56(c) the Crafts cannot rest upon the mere allegations of their pleadings in the face of contrary evidence in the depositions and affidavits, we believe that they have raised a genuine issue of fact with regard to Economy's good faith, especially since Economy's subjective intent and credibility are such central issues. We therefore find that summary judgment on the first two claims was improper.[12]

We reach a similar conclusion with regard to the intervention allegations. The key question is whether Economy's purpose in intervening was vindictive rather than protective of its legal position in the present suit. Economy supports its assertion that its objective was self-protection with statements of counsel and by pointing out that it did not intervene in the state court suit until after the decision in *Matney*

---

12. Accordingly, we believe that in making its findings of fact that "the defendant sought in good faith to pay only the amount which the law requires to be paid under its contract" (Finding of Fact No. 19) and that the "actions, investigations . . . inquiries, negotiations and efforts of Economy . . . in investigating and negotiating on the merits of the claim of its insured were both reasonable and diligent" (Finding of Fact No. 15), the court below undertook a weighing of the evidence which should have been left to the jury.

and that it withdrew as soon as the Crafts agreed not to attempt to bring the results of the state court suit into federal court. On the other hand, the Crafts' allegations of malice raise a question of intent that is ill-suited to resolution on summary judgment. Although we cannot agree with the Crafts' argument that since Economy's intervention was against its subrogation rights it should be considered presumptively malicious, we believe that the facts are sufficiently ambiguous so as to warrant further development at trial.

■ If the jury finds that Economy breached its duty of good faith and fair dealing, the Crafts will be entitled to receive compensatory damages, including interest for any undue delay in payment of the policy limits and compensation for any other injury proximately caused by Economy's breach. However, it appears that the Crafts also claim that they are entitled to punitive damages. Under Indiana law punitive damages may be awarded for a tortious breach of an insurance contract if the insurer's conduct amounted to "fraud, malice, gross negligence or oppression" and "the public interest will be served by the deterrent effect punitive damages will have upon future conduct of the wrongdoer and parties similarly situated." *Vernon Fire & Casualty Insurance Co. v. Sharp*, 349 N.E.2d 173, 180 (Ind.Sup.Ct.1976); *Rex Insurance Co. v. Baldwin*, 323 N.E.2d 270 (Ind.App. 1975); see also *Hibschman Pontiac, Inc. v. Batchelor*, 362 N.E.2d 845, 848 (Ind.Sup.Ct. 1977). Since Indiana has recognized a public interest in deterring insurance companies from attempting to exact additional consideration from their insureds, *Vernon Fire & Casualty Insurance Co. v. Sharp, supra*, at 185, the jury should be allowed to consider an award of punitive damages if the court finds at trial that there is any evidence of fraud, malice, gross negligence or oppressive conduct.[13]

The judgment of the court below is reversed and the case is remanded for further proceedings consistent with this opinion.

13. Contrary to the assertion of Economy, we do not see how the fact that the Crafts were represented by counsel from the first negates any possibility of finding oppressive conduct on the part of the insurer.