**SHELBY FEDERAL SAVINGS AND LOAN ASSOCIATION, Appellant (Defendant Below),**

v.

**Frederick E. DOSS and Edna W. Doss, Appellees (Plaintiffs Below).**

**No. 4–781A54.**

Court of Appeals of Indiana, Second District.

Feb. 15th, 1982.

Gene R. Leeuw, Bruce A. Walker, Kline-man, Rose, Wolf & Wallack, Indianapolis, for appellant.

William E. Suess, Darrow A. Owens, Indianapolis, for appellees.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Shelby Federal Savings and Loan Association (Shelby) appeals from an award of compensatory and punitive damages to Frederick and Edna Doss (Dosses) claiming, *inter alia*, that the evidence does not support the damages awarded, that the trial court erred in allowing the Dosses' attorney to serve as both witness and counsel, that error was committed in allowing the jury to take the complaint with it during deliberations, and that the court erred in the giving and refusing of several instructions.

We affirm.

## FACTS

The facts most favorable to the verdict of the trial court are as follows:

In early 1971 the Dosses purchased a home in Indianapolis, assuming an existing mortgage in favor of Citizens Federal Savings and Loan Association. At the time the Dosses assumed the mortgage, it was somewhat in arrears. They paid the arrearage, brought the mortgage current, and maintained it pursuant to its terms. It bears interest at the rate of 5¾%.

In 1975 Shelby acquired Citizens' Federal, and took over the mortgage. The Dosses continued to make monthly payments at the various Shelby branches. During the course of making these payments, the Doss-es noticed that their balance was not declining as it should have been. For example, following the June, 1975 payment the balance due was $8,774.04. After two more years of payments, in May, 1977, their balance, according to Shelby, was $8,795.11. The Dosses inquired as to the accuracy of their account on repeated occasions, and were invariably told by Shelby personnel that if they wanted their balance to go down faster they should pay more money. Finally, because of the unresponsiveness of Shelby to their inquiries, the Dosses hired attorney William Suess in April, 1978.

On April 24, 1978 Suess contacted Shelby and inquired regarding the status of the Dosses account. Delores Bartlett of Loan Service Department told Suess to tell his clients to pay more money if they wanted their balance to go down faster. When Suess insisted that inquiry be made into the status of the account Bartlett said "I have too much to do, or we have too much to do here to check into this matter." (*R.* at 262). Later Bartlett called Suess and informed him that Shelby had been charging too much interest on the Dosses account, and that the treasurer John Ehrhart (Ehrhart) would soon contact Suess.

On April 25, 1978 Ehrhart called Suess and told him that Shelby had been erroneously charging interest at the rate of 8% on the 5¾% mortgage. On April 27, Suess wrote to Ehrhart and informed him that he was prepared to meet with him to discuss the account and that the Dosses had given their April payment to Suess for delivery. Suess proposed holding the April payment until the account was settled, and that Ehrhart contact him if he had any objection to that arrangement.

On May 4, 1978 client Doss informed Suess that he had received a call from Shelby Federal about his April payment. Despite having notice that the Dosses had retained counsel, and despite Ehrhart's acquiescence to Suess's proposed arrangement regarding the April payment, Shelby had communicated directly with the Dosses.

Ehrhart made an appointment for May 10, 1978 with Suess. Thomas E. Ochs (Ochs), the president of Shelby, wanted to attend that conference. On that date, shortly before the conference was to occur, Ochs cancelled the meeting. It was reset for the following morning. At that time, only Ochs met with Suess. Ochs claimed that Shelby had written authorization, signed by the Dosses, to charge 8% interest on the mortgage. Ochs stated that Shelby's charges were justified by that agreement, although he could not produce it and never did. Later testimony indicated that no such agreement ever existed. Despite the "justification" of the charges given by the purported document, Ochs offered Suess a $770.14 adjustment on the Dosses account at that meeting. Suess refused Och's settlement offer, and informed Ochs that henceforth all payments on behalf of the Dosses account would come through Suess's trust account. At the conclusion of the meeting, Ochs gave Suess a copy of treasurer Ehrhart's figures on the account.

Suess's calculations based on Ehrhart's records showed an error of $1,825.72 plus late charges wrongfully assessed. Suess offered to settle for that amount, which came to $1,851.04. Instead of accepting Suess's settlement offer, Ochs forwarded what he styled a "temporary receipt" in the amount of $1,661.86. Because that counter-offer from Ochs was unacceptable, Suess filed suit on July 21, 1978 asking for $1,851.04 compensatory damages and $7,500.00 punitive damages.

Two and one half years later (and two and one half weeks before trial) Suess received

a copy of a letter, addressed *to my clients.* It's in an envelope from Mr. Leeuw's [counsel for Shelby] law office without an accompanying letter. The letter is dated from Shelby Federal Savings & Loan Association saying that we have audited your account and found that there's an error on our part in the amount of One Hundred and fifty-four

dollars ($154.00) and some cents and we are crediting your account. That letter went on the 11th to my clients, directly to them.[1]

(*R.* at 289 emphasis added). The above letter, dated November 7, 1980, by proposing an additional adjustment of $154.92 to the Dosses' account, would, if added to Ochs's refused settlement counter-offer of $1,661.86 made in July 1978, have constituted a proposed credit to the Dosses' account of $1,816.78. The letter was apparently a settlement offer communicated directly to the Dosses by Shelby.

During a jury trial held December 16–18, 1980, Suess found it necessary to testify as a witness on behalf of the Dosses, and also to act as their counsel. Following trial, the jury awarded a verdict in favor of the Dosses in the amount of $1,816.78 compensatory damages and $2,500.00 punitive damages. Judgment was entered for those amounts.

Shelby appeals, presenting the following issues for review (as consolidated by this court):

## ISSUES

1. Did the trial court err in allowing the jury to enter an award of compensatory damages in favor of the Dosses?

2. Was the award of punitive damages supported by the evidence and in accord with law?

3. Did the trial court err in permitting the Dosses' attorney to serve as both witness and counsel?

4. Did the trial court err in allowing the jury to take the complaint into the jury room?

5. Did the trial court err in giving an instruction which made use of the word "waste"?

6. Did the trial court err in the giving of certain instructions and the refusal of others?

---

1. *See* D.R. 7–104(A)(1) which prohibits communication "on the subject of . . . representation with a party he knows to be represented by a lawyer in that matter . . ."

## DECISION

*ISSUE ONE*—Did the trial court err in allowing the jury to enter an award of compensatory damages in favor of the Dosses?

*CONCLUSION*—There was no error in the award of compensatory damages to the Dosses.

The contours of this case are drawn by our disposition of this issue. If we determine that the award of compensatory damages is supported by sufficient evidence and is otherwise lawful, and we do, then we must address the other issues raised by Shelby.

Shelby's argument as to the insufficiency of the evidence is that because Shelby offered to credit the Dosses' account in the amount of $1,816.78 prior to trial, there was no basis for the award of compensatory damages entered by the jury in the amount of $1,816.78. Long settled principles of accord and satisfaction dictate otherwise.

The Dosses' complaint requested compensatory damages, based upon treasurer-Ehrhart's figures, of $1,851.04. Prior to the filing of that complaint Ochs made a settlement offer of $1,661.86. This offer was *rejected*, as were all other offers. Despite that rejection Shelby pleaded the affirmative defense of accord and satisfaction in its answer. Shelby presented evidence at trial in an attempt to show an accord and satisfaction, and was obviously unsuccessful in persuading the trier of fact that such an agreement had occurred. On appeal, Shelby proffers the same factual argument.

■ "It is beyond dispute that an accord and satisfaction is an express contract. *Sunderman v. Sunderman*, (1945) 116 Ind. App. 157, 63 N.E.2d 154." *Homemakers Finance Service v. Ellsworth*, (1978) Ind. App., 380 N.E.2d 1285, 1288. *Accord, Gearhart v. Baker*, (1979) Ind.App., 393 N.E.2d 258, 260. Just as in other contractual contexts, tender must be accepted in order to consummate an accord and satisfaction. *Cole Associates, Inc. v. Holsman*, (1979) Ind. App., 391 N.E.2d 1196. The word "accord" denotes the offer element of the transac-

tion, and the acceptance of that offer is called the "satisfaction." "An accord without satisfaction is not good." *Eichholtz v. Taylor*, (1882) 88 Ind. 38, 45. "To constitute accord and satisfaction, that which is received by the creditor must be accepted by him in satisfaction; he must intend to accept it as satisfaction; and whether there was such an acceptance is a question for the jury." *Frick v. Algeier*, (1882) 87 Ind. 255, 256. A defendant pleading the defense of accord and satisfaction has the burden of proving that fact. *I. Duffey and Son Co. v. Buroker*, (1937) 103 Ind.App. 397, 8 N.E.2d 111, 112.

■ Shelby, having sustained an adverse negative judgment on this point, must now show that the evidence regarding accord and satisfaction "was without conflict and that such evidence could only reasonably lead to a conclusion contrary to the one reached by the trial judge." *Town and Country Mutual Insurance Company v. Savage*, (1981) Ind.App., 421 N.E.2d 704, 708, trans. denied Dec. 14, 1981. Such is not the case. The account ledgers of Shelby were placed in evidence and the amount awarded was within the ambit of the errors disclosed. There was ample evidence to support the judgment, Shelby's factual protestations to the contrary notwithstanding. Shelby, by virtue of its control over account records, cannot compel acceptance by a customer or a court of *any* adjustment it sees fit to make. *See e.g. Id.* at 710.

Another branch of this issue is Shelby's attack on the refusal of the trial court to accept journal entries showing that the Dosses' account balance was "accurate" at the time of trial. It was not error to refuse that evidence for several reasons.

■ First, the court made certain that the jury had before it ample evidence of both the credits proposed by Shelby—the $1,661.86 offer plus the eve-of-trial offer of $154.92. At no time did Shelby contend there was, nor does the record indicate, any additional tender by Shelby. It was for the jury to decide, as a question of fact, whether the Dosses accepted the amounts in ques-

tion (as discussed *supra*) and what, if any, credit was due them. The trial court properly concluded that the "bottom line" of the account *as presented by Shelby* at the time of trial was irrelevant. Shelby attempted to submit evidence which would have invaded the fact-finding function of the jury as to both the act of acceptance or rejection of the proposed "credits" by the Dosses, *and* the correctness of the amounts in question. Shelby cannot transform, by mere insistence, its unilateral "crediting" of the Dosses' account to anything more than an unaccepted offer to settle. No error was committed in the rejection of this evidence.

■ Finally, we take the opportunity here to exorcise the specter of "double recovery" implied by Shelby in its briefs. The order of the trial court awarding the Dosses compensatory damages of $1,816.78 is based upon the factual conclusion that the Dosses rejected Shelby's proposed pre-trial tenders. The journal entries reflecting those tenders have thus been found to be legal nullities—mere unaccepted offers to contract. *Eichholtz, supra.* They may therefore be removed from the books. The verdict of the court in the amount of $1,816.78 incorporated and laid to rest all the compensatory claims between these parties.

*ISSUE TWO*—Was the award of punitive damages supported by the evidence and in accord with law?

*CONCLUSION*—The award of punitive damages was not erroneous.

■ Much of Shelby's argument on this issue is based upon the proposition that there can be no award of punitive damages absent the presence of compensatory damages. Having just determined that the award of compensatory damages was proper in this case, we turn to the remainder of Shelby's argument that the evidence is insufficient to support the award of punitive damages. Specifically, Shelby maintains the record fails to disclose the presence of conduct manifesting "the elements of fraud, malice, gross negligence or oppression" which are the basis for awarding punitive damages. *Vernon Fire and Casualty Insurance Company v. Sharp*, (1976) 264 Ind. 599, 349 N.E.2d 173, 180; *see also Jones v. Abriani*, (1976) 169 Ind.App. 556, 350 N.E.2d 635; *Rex Ins. Co. v. Baldwin*, (1975) 163 Ind.App. 308, 323 N.E.2d 270; *Jerry Alderman Ford Sales, Inc. v. Bailey*, (1972) 154 Ind.App. 632, 291 N.E.2d 92. Presumably Shelby is aware that in reviewing the evidence to determine if it is sufficient to support an award of punitive damages, we will sustain the trial court's verdict if there is evidence of probative value supporting it. "Where there is a conflict in the evidence, the trier of fact in the court below must resolve that conflict. *Brand v. Monumental Life Insurance Company*, (1981) Ind., 417 N.E.2d 297." *Art Hill Ford, Inc. v. Callender*, (1981) Ind., 423 N.E.2d 601.

The facts in this case construed favorably to the judgment are such as to be within the rule of two supreme court cases, *Vernon Fire and Casualty Insurance Company, supra*, and *Art Hill Ford, Inc., supra.* In *Vernon*, the insurance company, knowing of the insured's desperate need for funds to rebuild his business, consistently refused to pay proceeds admittedly due. In *Art Hill Ford*, a Ford dealer took an abnormally long time to repair plaintiff's truck, claiming a non-existent shortage of parts and engaging in other conduct tending to mislead and discourage the truck purchaser.

In this case, for years the Dosses' repeated inquiries regarding their account were "brushed off with meaningless excuses". *See Art Hill Ford, Inc.* at 604. This conduct by Shelby continued even after the Dosses retained counsel. On at least two occasions after Shelby was aware Suess represented the Dosses, it communicated directly with them regarding the matter in controversy. When Ochs met with Suess before suit was filed, he made unsubstantiated and misleading representations regarding an agreement signed by the Dosses which did not exist. Shelby, which had exclusive control of the mortgage account records, consistently refused to accurately monitor the account. Thus, the jury could well find that the course of conduct engaged in by Shelby contained elements of

bad faith, misrepresentation, fraud, gross negligence or oppression. *Vernon Fire and Casualty Insurance Co., supra.*

Shelby's objections to the Dosses' tendered instructions regarding punitive damages all took the form of challenges to the sufficiency of evidence of punitive damages to support the giving of the instructions. As the evidence was sufficient, the Dosses' instructions were properly given.

■ Similarly, we can find no error in the refusal of Shelby's proffered verdict forms. Because those forms did not provide spaces for punitive damages, they were properly refused.

■ Finally, Shelby argues that its tendered instruction number 8 regarding punitive damages was erroneously refused. In light of the fact that court's instructions 10, 12, and 15 instructed the jury on all the points covered in tendered instruction number 8, it was not error to refuse it.

*ISSUE THREE*—Did the trial court err in permitting the Dosses' attorney to serve as both witness and counsel?

*CONCLUSION*—No error was committed in allowing the Dosses' attorney to serve as both witness and counsel.

Shelby would have us believe it was irreparably injured when the trial court allowed Suess to testify about his dealings with Shelby officers and personnel—a contention unsupported by authority.

■ Shelby does cite to several cases which involved witness testimony from lawyer-advocates. Not one of the cases cited was reversed for that reason. The exceptions allowing a lawyer to serve as both counsel and witness in a case include a provision allowing a lawyer to function in that dual role "if refusal would work a substantial hardship upon the client because of the distinctive value of the lawyer or his firm as counsel in the particular case." D.R. 5–101(B)(4). The record in this case reveals that the parties argued the merits of the situation at bar to the trial judge, who made a discretionary determination that the Dosses would be the victims of

hardship if Suess ceased to be their lawyer. We will not substitute our judgment for that of the trial court.

Additionally, the court instructed the jury that the testimony of a lawyer-witness should be weighed and considered in the same fashion as that of any other witness. (Instruction number 18, *R.* at 128) This further reduced any potential prejudice to Shelby. *See generally, Cherry v. State,* (1981) Ind., 414 N.E.2d 301; *Worthington v. State,* (1980) Ind., 405 N.E.2d 913; *State ex rel. Goldsmith v. Superior Court,* (1979) Ind., 386 N.E.2d 942; *Hodge v. State,* (1976) 264 Ind. 377, 344 N.E.2d 293; *Butler v. State,* (1951) 229 Ind. 241, 97 N.E.2d 492; *Kintz v. R. J. Menz Lumber Company,* (1911) 47 Ind.App. 475, 94 N.E. 802.

*ISSUE FOUR*—Did the trial court err in allowing the jury to take the complaint into the jury room?

*CONCLUSION*—There was no error in allowing the jury to take the complaint with it during deliberations.

The argument is that because the complaint requested, in addition to $1,851.04 compensatory and $7,500.00 punitive damages, attorney's fees and damages for mental anguish, it was error to submit it to the jury. However, existing authority is otherwise.

■ The pleadings in a case "shall be considered as before the court *and jury* without being formally read into evidence." *McKaig v. Jordan,* (1909) 172 Ind. 84, 87 N.E. 974, 976 (emphasis added). "It is not error to permit the jury to have the pleadings in the case in the jury room during deliberations." *Id. See also, Shulse v. McWilliams,* (1885) 104 Ind. 512, 3 N.E. 243; *Summers v. Greathouse,* (1882) 87 Ind. 205; *Snyder v. Braden,* (1877) 58 Ind. 143; *Daggy v. Coats,* (1862) 19 Ind. 259; *Haas v. Cones Mfg. Co.,* (1900) 25 Ind.App. 469, 58 N.E. 499.

■ As to the question of the request for attorney fees contained in the complaint, the jury was instructed that it was not to concern itself with that element. (Instruction number 21, *R.* at 131). Fur-

thermore the compensatory damages were less than the amount requested in the complaint ($1,851.04), and were exclusively supported by evidence gleaned from Shelby's own account books. Because we indulge in every reasonable presumption favoring the trial court's judgment, T.R. 52, even if there was error because the complaint referred to damages for "mental anguish", it was harmless. T.R. 61.

*ISSUE FIVE*—Did the trial court err in giving an instruction which made use of the word "waste?"

*CONCLUSION*—The use of the word "waste" in an instruction was not reversible error.

Shelby makes much of instruction number 6, which reads as follows:

> Customers place reliance for the protection of their interests on the integrity, faithfulness and watchfulness of employees of financial institutions. These duties and trusts by employees must be faithfully discharged. If these employees depart from this line of duty and *waste* instead of protect the customers' property, the institution may be held liable for restoring to the injured what has been lost.

(*R.* at 116.) (emphasis supplied).

The focal point of Shelby's assignment of error is one word—"waste." The argument is that because there was no evidence of activity by it which "wasted" the Dosses' property (as that term is used as a legal term of art) it was reversible error to use the word "waste" in the instruction.

■■■ This argument presupposes that the jurors would treat the word "waste" as used in the instruction as a term of art. No legal definition of the word "waste" was ever given to the jury. Jurors are presumed to possess knowledge, not of the definitions of terms of art, but of "the definition of words in our standard dictionaries." *Shultz v. State*, (1981) Ind.App., 417 N.E.2d 1127, 1134 *reh. denied*, Ind.App., 421 N.E.2d 22, *trans. denied*, December 1, 1981. Not having been instructed otherwise, the jury considered the term in its common sense, which has been defined:

1. To use, consume, or expend thoughtlessly or carelessly, used to no avail; squander.

2. To cause to lose energy, strength or vigor; exhaust, tire or enfeeble....

*American Heritage Dictionary of the English Language* (1970). In light of the evidence disclosed by the record, we cannot say that the single use of the word "waste" in instruction number 6 was capable of misleading the jury. If there was any error in this regard, it was harmless. T.R. 61.

*ISSUE SIX*—Did the trial court err in the giving of certain instructions and the refusal of others?

*CONCLUSION*—No reversible error was committed with regard to the instructions offered and refused.

■■■ Here we resolve several different assignments of error presented by Shelby, all dealing with jury instructions which were offered and refused. We are guided in this endeavor by the usual three-step analysis for determining whether instructions were properly refused: 1.) Does the instruction correctly state the law? 2.) Is there evidence within the record to support the giving of the instruction? and 3.) Is the subject of the tendered instruction adequately covered by other instructions which were given? *Davis v. State*, (1976) 265 Ind. 476, 355 N.E.2d 836.

Shelby says the trial court erred in refusing to give its tendered instructions numbers 1, 2, 3, 4, 6, and 7 to the jury, and in giving, over objection, court's instruction number 13.

■■■ Shelby's instructions numbers 2 and 3 deal with the awarding of nominal and compensatory damages respectively. Court's instruction number 14 instructed the jury regarding the same points of law included in Shelby's instructions:

> To recover compensatory damages, there must be a loss brought upon the complaining party by the defendant's violation of some legal right, otherwise it is considered merely damage without any legal right.

> Where compensatory damages are awarded, the recovery must be confined to the actual damages sustained, and a party who has suffered a loss should receive only such sum as will compensate for the loss actually sustained.

(*R.* at 124). Because the substance of the tendered instructions was covered by other instructions which were given, it was not error to refuse them. *Davis v. State, supra.*

■ Shelby's tendered instruction number 1 dealt with the time at which damages should have been assessed:

*Time at Which Damages May be Assessed*

> One of the issues raised by the Defendant in this case has to do with the time Plaintiffs brought their action and the amount of their actual damage at that time. Specifically Defendant argues that it had already rectified most of the previous bookkeeping errors by the crediting of Plaintiffs' mortgage 2 months and 10 days prior to the date Plaintiffs filed their lawsuit. With regard to this argument, and in the event you feel that damages should be assessed against Defendant, you should know that Plaintiffs' damages, if any, must be assessed as of the date when their action was filed. Only such damages as have accrued at the time of commencement of Plaintiffs' action are recoverable.

> You are instructed that Plaintiffs filed their action on July 21, 1978. Any entitlement to damages you feel is due Plaintiffs must be reckoned as of this date. If your find from a consideration of the evidence that Defendant rectified all bookkeeping errors as of this date, then you should return a verdict in favor of the Defendant. If you find that errors were still present in Defendant's accounting as of July 21, 1978, then you must ascertain if Plaintiffs sustained any recoverable damage as a result of any such errors and compensate Plaintiffs accordingly.

(Footnotes omitted). Aside from the fact that this instruction could easily be considered argumentative because it dwells at length upon Shelby's position in the accord and satisfaction argument, court's instruction number 16 instructed the jury that "[a] defendant may show in mitigation or a reduction of damages any facts or payments surrounding the incident which tend to reduce the amount required for just compensation to the plaintiffs." (*R.* at 126.) Shelby's instruction number 1 was properly refused.

■ With regard to Shelby's tendered instruction number 7 regarding mental anguish, Shelby concedes in its brief that there was "absolutely no evidence introduced at the trial relating to these items." (Appellant's brief at 66.) It was therefore properly refused because it was not supported by evidence in the record. *Davis, supra.*

■ Shelby's instructions 4 and 6 discuss, in considerable detail, the law in Indiana regarding the awarding of attorney's fees. Court's instruction number 21 told the jury that attorney's fees are not a matter for the jury to consider, and that "[a]ttorney's fees are the responsibility of the individual parties and are not allowable in the absence of statute or in the absence of some contractual agreement specifically allowing the same." (*R.* at 131.) It was not error to refuse Shelby's instructions regarding attorney's fees.

■ Finally, Shelby claims error in the court's giving of instruction number 13, which stated, *inter alia*, that in assessing damages the jury should compensate the plaintiffs "for any losses they may have sustained" through Shelby's mishandling of the account. Shelby argues that the "any losses" terminology ignores "such well settled principles and highly relevant damage issues and questions as probable [sic] cause, and 'nominal' versus 'actual' damages." (Appellant's brief at 71.) However the jury was instructed regarding the proper measure of damages (court's instructions numbers 8, 14, 16, and 21) and proximate cause (court's instructions numbers 4, 8, 16, and 17.) Within the context of the other instructions which were given, court's instruc-

tion number 13 could not have misled the jury. That conclusion finds additional support in the fact that the amount of compensatory damages awarded exactly equalled the amount requested in the complaint and supported by the account books and no more. Shelby was not harmed by the giving of this instruction.

Having been shown no reversible error, the decision of the trial court is

AFFIRMED.

HOFFMAN and RATLIFF, JJ. (sitting by designation), concur.