CLARENCE MILTON CARLILE *v.* STATE OF INDIANA.

[No. 2-373A62. Filed November 15, 1973. Rehearing denied January 8, 1974. Transfer denied March 25, 1974.]

*Frank E. Spencer,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert A. Zaban,* Deputy Attorney General, for appellee.

HOFFMAN, C.J.—Defendant-appellant Clarence Milton Carlile was charged by affidavit in two counts on September 27, 1971, with the offense of robbery and with violation of the 1935 Firearms Act.

Following trial to the court, Carlile was found guilty of the offense of robbery, and not guilty of violation of the 1935 Firearms Act. Thereafter, on April 5, 1971, he was sentenced to imprisonment for ten to twenty-five years and costs, disfranchised for ten years, and committed to the Department of Corrections for classification and confinement.

On December 15, 1972, Carlile filed his petition to file a belated motion to correct errors. On the same day, the trial

court granted defendant's petition and subsequently over-ruled such motion. This appeal ensued.

The evidence most favorable to the State discloses that during the afternoon of August 10, 1971, one Ricky Knox, age fifteen, and a friend, Tommy Davis, were crossing a railroad trestle near Fall Creek Parkway in Marion County, Indiana, when they were approached by two persons, one of whom was later identified as the defendant. Carlile, while visibly armed, proceeded to relieve Knox of several items of musical equipment over Knox's continued protest. The equipment, consisting of a "Fender base [bass], two wow-wow pedals, and a fuzz tone", belonged to Knox and was being transported by him and his friend to a band practice. Knox testified that he again saw the defendant about four days later at the Fair Grounds.

The first issue presented for review is whether the trial court erred in permitting Ricky Knox, a witness for the prosecution, to elaborate upon his affirmative response to a question posed by the defense under cross-examination.

The particular colloquy at issue appears in the following context:

"Q. Now you say this happened on August the tenth, 1971, and you saw him again right before the fair started?
"A. It wasn't too far from the fair cause everybody was looking for jobs.
"Q. That would be what, two or three weeks later?
"A. No, it wasn't that far.
"Q. Where did you see him at the Fair Grounds.
"A. In the Coliseum horse show.
"Q. He was sitting up in the balcony, was he not?
"A. Yes, when we got . . .
"Q. Him and two other guys were sitting. . . ."

At this point, the prosecution implored defense counsel to allow the witness to complete his answer and the court thereupon inquired as to whether there was a further answer to the question. Knox proceeded to testify as follows:

"A. Yes, he was sitting in the balcony and I said that looked like him, you know, and then when I went to get a pop when I was getting ready to go back up the steps. . . ."

It is not certain that the trial court actually permitted or authorized the witness to elaborate upon his previous answer. The court did not ask Knox to explain what he meant by his answer. Rather, the court merely asked if there *was* a further explanation. It is not apparent that such an inquiry sought to elicit anything more from the witness but a simple "yes" or "no" response.

Assuming, however, for the sake of argument, that the court's inquiry did, in fact, constitute permission for the witness to explain his answer and assuming further that the giving of such permission was error, the error was waived by the failure of the defense to move that the allegedly unresponsive answer be stricken. *Peachee* v. *State* (1939), 216 Ind. 42, 46, 22 N.E.2d 979; *Lankford* v. *The State* (1896), 144 Ind. 428, 43 N.E. 444.

Moreover, an examination of the record reveals that the answer here in question is substantially similar in content to an earlier response given by Knox under direct examination. The previous testimony referred to reads as follows:

"Q. When was the next time you saw either of these two individuals?
"A. I seen Carlile at the Fair Grounds.
"Q. When did you see him?
"A. It was about four days before the Fair started.
"Q. All right. And what did you do then?
"A. When I seen him I said that looked like the one that held us up, and then I called . . ."

Both Knox's testimony under direct examination and his response under cross-examination describe his observation that the person he saw at the Fair Grounds appeared to be Carlile. Thus, the latter testimony by the witness, under cross-examination, was merely cumula-

tive in nature and the matter of its admission or exclusion rested largely within the sound discretion of the trial court. *Chappell* v. *State* (1926), 197 Ind. 272, 150 N.E. 769; *Bassett* v. *State* (1921), 190 Ind. 213, 130 N.E. 118.

The next issue to be considered is whether the trial court erred in sustaining objections by the State to the admission of evidence concerning plea bargaining.

Appellant contends that questions concerning plea bargaining were relevant to demonstrate bias or prejudice on the part of Officer Vance, a member of the Indianapolis Police Department and a witness for the State.

This court, in *Hineman* v. *State* (1973), 155 Ind. App. 293, 292 N.E.2d 618, at 623, held that,

> "[A]ny communication or evidence relating to plea bargaining negotiations offered in evidence by the defendant is inadmissible unless the defendant subsequently enters a plea of guilty which is not withdrawn." See also: *Moulder* v. *State* (1972), 154 Ind. App. 248, 289 N.E.2d 522, 528, 33 Ind. Dec. 687. ABA Standards, Pleas of Guilty, § 3.4, at 77, [Approved Draft, March 1968].

During cross-examination of Officer Vance, the following question was posed by the defense:

> "Q. Didn't you find out when you got to court that there had been plea bargaining?"

This inquiry elicited an immediate objection by the State on the ground that "any pre-trial plea bargaining is not admissible into evidence in any kind of a case." The court, after determining that plea bargaining had, in fact, occurred in the instant case, sustained the objection.

It is a well-established rule in this State that a trial court is to be accorded considerable latitude in the exercise of its discretion as to what may be determined on cross-examination. *Pinkston* v. *State* (1972), 258 Ind. 672, 284 N.E.2d 767; *Johnson* v. *State* (1971), 257 Ind.

389, 275 N.E.2d 14; *Barker* v. *State* (1958), 238 Ind. 271, 150 N.E.2d 680.

The question posed by the defense and objected to by the State is patently objectionable in that it refers specifically to plea bargaining. It cannot, therefore, be said that the trial court erred or committed an abuse of discretion in sustaining the objection.

Subsequently, during direct examination of Mr. Owen M. Mullin, a witness for the defense and former defense counsel for Clarence Carlile, the following question was asked:

"Q. And Sergeant Vance stated to the Court a little while ago that at no time on the twenty-third of December or on the sixth of January he entered into a verbal conflict with the deputy prosecutor in this case. Would you say that was a fair and accurate statement?

"A. Well, I, whatever he says is up for him to say, and I am not going to question what he said. Here is what I saw. . . ."

At this point, the State was permitted to interpose the following preliminary questions for the purpose of making an objection:

"Q. And the conversations you are about to relate, or the observations you made, were pursuant to plea negotiations, weren't they, or a result of plea negotiations?

"A. I came into court that day to enter into . . .

"Q. Yes or no, sir.

"A. . . . plea negotiations, yes."

Thereafter, an objection by the State to "any questions that go to plea negotiations that occurred prior to the trial of this matter" was sustained.

The propriety of the trial court's action in sustaining an objection "to any questions that go to plea negotiations" cannot be doubted in view of the holding in *Hineman* v. *State, supra.* Moreover, protests concerning the exclusion of such evidence lack merit where substan-

tially similar evidence was later introduced without objection during direct examination of the same witness.

The final issue presented for review is whether the trial court erred in permitting the State to cross-examine a witness concerning matters allegedly within the knowledge of the witness' mother.

Defense witness Gary Lacy testified, under direct examination, that Clarence Carlile was not with him on the date the crime was committed. Under cross-examination, Lacy denied that Carlile had threatened him and forced him to testify in his behalf. Subsequently, the witness was asked if his mother knew of other situations in which Carlile had threatened him. Lacy responded affirmatively. Thereafter, the witness conceded that the defendant had been with him at the scene of the crime.

The testimony referred to by appellant concerning matters within the knowledge of the witness' mother was hearsay and should have been stricken upon defendant's motion. However, where other evidence is sufficient to establish guilt on the part of the accused, the admission into evidence of hearsay over defendant's objection constitutes harmless error. *Johnson* v. *State* (1968), 251 Ind. 17, 238 N.E.2d 651; *Wolfe* v. *State* (1928), 200 Ind. 557, 159 N.E. 545.

In the case at bar, the State was successful in showing that Carlile had been in Lacy's company at the scene of the crime. Prejudice to the defendant resulting from the prior admission of hearsay testimony is, therefore, non-existent.

No reversible error having been shown, the judgment of the trial court is, therefore, affirmed.

Affirmed.

Lowdermilk and Staton, JJ., concur.

NOTE.—Reported at 303 N.E.2d 303.