James H. SHULTZ, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 2–980A301.

Court of Appeals of Indiana, Second District.

June 2, 1981.

Charles H. Criss, Fern & Criss, Peru, for appellant.

touching with intent to commit serious bodily injury.

Theodore L. Sendak, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## ON PETITION FOR REHEARING

Appellant James Shultz (Shultz) petitions for rehearing on our decision of March 16, 1981, (reported at 417 N.E.2d 1127, Ind. App.) affirming the trial court's verdict finding him guilty of driving while intoxicated (I.C. 9–4–1–54(b)) and driving left of center (I.C. 9–4–1–63) entered against him following a jury trial.

Petition for rehearing denied.

Shultz's conviction arose as a result of an automobile accident he was involved in on the night of October 18, 1979. To further emphasize the basis of our holding, we restate from the record the crucial facts pertaining to Shultz's guilt.

Lawrence Williamson (Williamson) was driving the car with which Shultz collided head-on. He testified that immediately after crossing a bridge, he observed Shultz's car strike the curb and cross the center line into his lane. Williamson had time to stop his car and back up, trying to avoid Shultz's car as it careened across the road, but despite his efforts, he was hit. Williamson sustained a pinched nerve in his back and an injured thumb. Although the extent of Williamson's passenger's injuries is not in the record, the passenger did pass out when he got out of Williamson's car.

Shultz struck Williamson's car twice, then backed his car up. He tried to re-start his car, but Williamson approached it and told him not to do so. Williamson said that while speaking to Shultz as Shultz sat in his car, there was a "profuse smell [of alcohol] about the car." *R.* at 94. Williamson, who has an associate's degree in criminology, and stated that he has had ample experience observing people in intoxicated states, testified that Shultz was "I would say under the influence of something, that's for sure. I would say he shouldn't be driving, let's just put it that way." *R.* at 95. When asked to state his opinion, Williamson said "In my opinion he was well past the point of intoxication." *R.* at 100. Williamson estimated Shultz's speed at the time of impact at around 45 to 50 miles per hour.

Mark Yentes was a bystander who saw the accident. When he approached Shultz's car after the wreck, Shultz was trying to start it. When asked what transpired at that point, Yentes said Shultz's words were slurred, there was the aroma of alcohol about him, and his movements were uncoordinated as he tried to restart his car.[1]

Like Yentes, every witness who observed Shultz at the time of the accident testified that he was intoxicated. Denise Lockey, a bystander who spoke to Shultz in his car,

---

1. A. He said that he couldn't stay, he said that he had to go to Kokomo, or lived in Kokomo, he said he just couldn't stay.
Q. And what did you observe as to his manner of speech as he was saying this?
A. He was, his words were slurred. The way he was acting and I am not any doctor, or anything, but I have been around enough people to [sic] it seemed to me that he was intoxicated.
Q. Now, Mr. Yentes, when you got up there was his window up or down?
A. It was down.
Q. And when you got to the window what if anything, could you smell?
A. It smelled very intensely like alcohol.
Q. Very what?
A. Very intensely.
Q. Intensely?
A. Yeah, it just had the aroma.
Q. How many persons were in the car?

A. Just himself.

. . . . .

A. When the EMT's [sic] finally got there, it took both of them to help him out of his car and up to the van. He was, I wouldn't say dragging his feet, but it didn't seem like he would support his own weight.

. . . . .

Q. What did you observe as to his movements as he tried to re-start his car?
A. They were, they didn't seem like they were very coordinated, they were, he would reach, act like he was going to start his car and then he would think about it for a second and then he would go ahead and do it.

. . . . .

A. For the amount of injuries that he had, he shouldn't have been in the condition he was, just for the injuries.
*R.* at 110–13.

gave her opinion that she thought he was drunk. Officer Richard Wecht of the Peru City Police Department said that even after being released from the emergency room after having his face bandaged, Shultz required support to walk. "He had an extreme odor of alcoholic beverage." R. at 129. Wecht also gave his opinion that Shultz was intoxicated. Officer Deanna Hann of the Peru Police Department said that "his eyes were bloodshot and he couldn't walk without any assistance from us or anyone else, . . . he smelled strongly of alcohol." R. at 138. She stated that in her opinion Shultz was intoxicated.

While in the emergency room, Shultz remarked to a medical technician, "Man I have had one too many." R. at 98.

Finally, Judy Russell, the laboratory technician who ran the test on the blood sample drawn from Shultz at the hospital, testified that his blood alcohol content at the time the blood was drawn—which was some period of time after the accident occurred—was .20%. Two-tenths of one percent blood alcohol content is twice the amount required for a presumptive showing of intoxication in Indiana.

In sum, every person who had contact with Shultz at the time of the accident testified unequivocally that he was obviously intoxicated. The conclusion of the witnesses who testified to that effect were based on Shultz's behavior, objective scientific data, and the olfactory aura that surrounded him.

The foregoing evidence strongly indicates Shultz's guilt of the crime of driving while intoxicated. Shultz alleges as error at trial the submission of a dictionary to the jury during its deliberations. In his Petition for Rehearing he argues that our opinion misconstrues the ruling precedent of *Conrad v. Tomlinson* (1972), 258 Ind. 115, 279 N.E.2d 546, in which our Supreme Court held that the failure to bring the jury into open court to communicate with the judge

> does not constitute reversible error unless some harm or prejudice has been suffered by the objecting party. When an irregularity such as this occurs harm will be

presumed, and if the irregularity is not explained, a reversal of judgment should follow. However, if an explanation for the alleged misconduct is offered and if this court is satisfied that no harm or prejudice resulted, then the judgment of the trial court will not be disturbed.

*Id.* at 551. Shultz argues that as the trial court had no idea what word or words the jury intended to define, there is no way to determine that no prejudice resulted from providing the jury with the dictionary.

We observe that in *Conrad* communications between the bailiff and the jury were *not* grounds for reversal. In *Gann v. State* (1975), 263 Ind. 297, 330 N.E.2d 88, the court held that in order to warrant a new trial misconduct or irregularity on the part of the jury must be gross and must be shown to have probably injured the accused. *Id.* 330 N.E.2d at 91. *Gann* and *Conrad* are consistent with a long line of Indiana case law addressing jury misconduct. In *Luck v. State* (1884), 96 Ind. 16, the fact the bailiff and the jury, during deliberations, went for a walk to the location where the crime had occurred was held to provide no grounds for a new trial. In *McClanahan v. State* (1954), 233 Ind. 365, 118 N.E.2d 734, the jury was given a copy of the statute under which the defendant was prosecuted and also discussed with the bailiff, outside the presence of the court, the defendant's age. The guilty verdict was affirmed. *Accord, Posey v. State* (1956), 234 Ind. 696, 131 N.E.2d 145. In *Oldham v. State* (1967), 249 Ind. 301, 231 N.E.2d 791, conversation between one of the jurors and a State's witness was held not to be reversible error.

In some of these cases, as in the case at bar, the evidence of the defendant's guilt is overwhelming. If it is conceded that the dictionary should not have been sent to the jury, and no explanation has been offered as to its use, any resulting error is not cause for reversal under these circumstances. It does not rise to the level of denial of a fair trial in view of the overwhelming evidence of guilt presented by the record. The substantiality of the evidence against a defendant can be properly considered in weighing

his allegations of technical error. *E. g., Luck v. State, supra,* "misconduct in the law ... will not authorize a new trial where ... the verdict is clearly right upon the evidence." *Id.* at 20. "Even when there is a separation of the jury without leave of the court, after they have retired to deliberate on their verdict, ... if the verdict appears clearly to be right upon the evidence a new trial will not be granted for that cause." *Masterson v. State* (1896), 144 Ind. 240, 43 N.E. 138, 141.[2] *Accord, Ballard v. State* (1974), 262 Ind. 482, 318 N.E.2d 798; *Hall v. State* (1972), 259 Ind. 131, 284 N.E.2d 758; *Skaggs v. State* (1973), 260 Ind. 180, 293 N.E.2d 781; *Wolfe v. State* (1928), 200 Ind. 557, 159 N.E. 545; *King v. State* (1979), Ind.App., 397 N.E.2d 1260; *Carlile v. State* (1973), 158 Ind.App. 508, 303 N.E.2d 303; *Arnold v. State* (1973), 157 Ind.App. 359, 300 N.E.2d 135; *Coffey v. Wininger* (1973), 156 Ind.App. 233, 296 N.E.2d 154; T.R. 61.

We have also considered recent cases such as *Bales v. State* (1981), Ind., 418 N.E.2d 215; *Walker v. State* (1980), Ind., 410 N.E.2d 1190; and *Cape v. State* (1980), Ind., 400 N.E.2d 161, and concluded that this case is distinguishable because the misconduct does not rise to the level of ex parte review of tape recorded testimony or separation of jurors in direct contravention of statute. As stated in our majority opinion "the definition of words in our standard dictionaries is taken as a matter of common knowledge which the jury is supposed to possess." 417 N.E.2d at 1134. The innocuousness of everyday definitions of common language found in the dictionary, coupled with the overwhelming evidence of Shultz's guilt presented by the record, leads us to conclude that any error by the trial court in this regard was harmless.

Accordingly, the petition for rehearing is denied.

PETITION DENIED.

NEAL, J. (sitting by designation), concurs.

SULLIVAN, J., dissents.

2. All of the foregoing cases were relied on by our Supreme Court in *Gann v. State, supra.*