John Ester THOMAS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1281S363.

Supreme Court of Indiana.

August 2, 1983.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., G. Douglas Seidman, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted in a jury trial of Burglary, a class B felony, Ind.Code § 35–43–2–1 (Burns 1979), Rape while Armed with a Deadly Weapon, a class A felony, Ind.Code § 35–42–4–1 (Burns 1979), and Unlawful Deviate Conduct while Armed with a Deadly Weapon, a class A felony, Ind.Code § 35–42–4–2 (Burns 1979). He was sentenced to twenty (20) years imprisonment for the Burglary, fifty (50) years for the Rape, and fifty (50) years for the Deviate Conduct, all sentences to run concurrently. He was also found to be an Habitual Offender, Ind.Code § 35–50–2–8 (Burns Supp.1982), and the sentences were enhanced by thirty (30) years, making a total of eighty (80) years.

This direct appeal raises three issues:

1. Whether the evidence was sufficient to sustain the verdicts.

2. Whether Defendant was denied a fair trial on the habitual offender question inasmuch as the evidence was limited to that which would directly prove or disprove whether he had been convicted of two prior felonies.

3. Whether the court erred in denying Defendant's motion to dismiss upon the grounds that the probable cause affidavit did not meet the requirements of the law.

\* \* \*

## ISSUE I

Defendant's claim of insufficient evidence is predicated, in part, upon his assertion that the testimony of the prosecutrix lacked sufficient credibility to be probative. At the outset, we note our standard of review:

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses." *Loyd v. State,* (1980) Ind., 398 N.E.2d 1260, 1264, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. (citations omitted).

The evidence most favorable to the State disclosed that on the evening of September 20, 1980, Marian Jackson was at home, when, at about 11:00 p.m., the Defendant, whom she knew at the time as John Ester, knocked on her door and asked if she wanted company. After she said no, Defendant left. Later Jackson awoke in her bed to find the Defendant standing over her with a knife. She cried in a soft voice and asked Defendant not to hurt her, and he told her to keep quiet or he would kill her. He then told her to take off her clothes. She did so, and he penetrated her. Defendant next grabbed her hair and forced her to perform fellatio on him. She submitted to the sexual intercourse and the fellatio because he was holding a butcher knife and had frightened her.

Following these acts, Defendant told Jackson to put her clothes on. She put on a robe, and the two went downstairs where Jackson found that a window pane in the back door had been broken. She began sweeping the glass from the floor, and Defendant left while it was still dark outside.

Jackson did not know the time, but at daylight she left her apartment to find a telephone. She called her mother who came to her aid. Jackson then related the

events to her parents and called the police at about 6:30 a.m. She told the police that John Ester had raped her and forced her to perform fellatio. Subsequently, she picked the defendant's photo from an array of photographs she was shown by the police and was informed that his name was John Ester Thomas.

Defendant charges that in order for the events above related to have transpired prior to 6:30 a.m. when she reported the crime to the police, Jackson could not have waited until daylight to leave her apartment. He premises this upon his showing that the sun did not rise in South Bend that day until 6:31 a.m. and argues that her testimony was controverted by "the immutable facts of nature," and that her credibility is, therefore, so suspect as to be of no probative value.

■ Assuming that Jackson testified incorrectly—or even falsely—with respect to the time she left her apartment, her entire testimony was not thereby rendered of no probative value. It remained for the jury to assess her credibility. The trier of fact has a right to believe a part of the testimony of a witness and disbelieve and reject a part thereof. *Indianapolis Railways v. Williams,* (1945) 115 Ind.App. 383, 59 N.E.2d 586. Additionally, we note that Defendant's argument ignores the substantial period of twilight that precedes sunrise, in view of which we see no basis for discrediting Jackson's testimony as controverted by "immutable facts of nature."

The disputed testimony is also partially corroborated by the testimony of Mary Suggs, a witness for the defense. Suggs testified that she let the Defendant into her apartment at 5:00 a.m. on the morning in question and that it was light at that time. Thus the jury could have reasonably concluded, from the evidence, that the victim had had adequate time, as much as one and one-half hours, to leave her apartment, at daylight, find a telephone, call her parents, and telephone the police by 6:30 a.m.

■ With respect to the Burglary charge, Defendant contends that the evi-

dence was deficient in that there was no showing that he broke into Jackson's apartment. Circumstantial evidence alone is sufficient to sustain a conviction so long as a reasonable man could find each element of the crime therefrom, beyond a reasonable doubt. *Collins v. State,* (1982) Ind., 431 N.E.2d 802, 803; *Brewer v. State,* (1981) Ind., 417 N.E.2d 889, 892. Upon the Burglary charge, the evidence most favorable to the State disclosed that Defendant was in Jackson's apartment and that the glass in the back door was broken. In view of his unauthorized presence and activity, as disclosed by Jackson's testimony, it is logical and reasonable for the jury to have inferred that Defendant broke the glass, unlocked the door, and entered the apartment. Jackson further testified that Defendant told her to tell the housing authorities that she broke the glass because she was locked out and that he would pay for it. A reasonable inference to be drawn therefrom is that the Defendant had broken the window.

### ISSUE II

■ As a part of the habitual offender portion of the trial, Defendant wished to present evidence to the jury regarding the severity of the sentence, his positive character traits, opportunities for rehabilitation, and his work record. In addition, he wished to read to the jury a definition of the word *habitual* from a dictionary. The court, over the objection of the Defendant, ordered that the evidence in that proceeding be limited to that which directly proved or disproved whether Defendant had been convicted of two prior felonies and that no mention of the penalty or dictionary definition of *habitual* would be allowed.

Defendant claims that the trial court's ruling denied him a fair trial. Ind.Code § 35–50–2–8 (Burns Supp.1982) provides:

"(a) The state may seek to have a person sentenced as a habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two [2] prior unrelated felony convictions."

The phrase "prior unrelated felony convictions" is defined in subsection (b):

"After he has been convicted and sentenced for a felony committed after sentencing for a prior unrelated felony conviction, a person has accumulated two [2] prior unrelated felony convictions."

The statute is unambiguous with respect to the meaning of the term "habitual offender." As used in the statute, the word "habitual" has a specific and limited meaning that differs from its general definition. Although it has been held that a jury may take a standard dictionary into the jury room during deliberation, *Shultz v. State,* (1981) Ind.App., 417 N.E.2d 1127, 1132, *reh. denied* (1981) Ind.App., 421 N.E.2d 22, in the case at bar, to have supplied the jury with a general definition of the term that has a particularized and unambiguous meaning under the statute would have served no useful purpose and would have had the potential for confusing it.

■ Any evidence which Defendant seeks to introduce in the habitual offender proceeding must be relevant to the matters at issue. *Owens v. State,* (1981) Ind., 427 N.E.2d 880, 886. The only issue before the trial court in such a proceeding is whether the Defendant has been found guilty and sentenced for the prior offenses charged. *Williams v. State,* (1982) Ind., 431 N.E.2d 793, 795. In *Owens,* the appellant was held not to have been entitled to present the jury with a presentence investigation report or an instruction informing the jury that if found guilty he would be sentenced to an additional thirty years. Nor had he been entitled to present the testimony of witnesses concerning his contributions to the community or the testimony of two police officers as to whether he was an habitual offender. Such testimony was deemed irrelevant to the issue before the jury. Here, the evidence Thomas sought to interject into the habitual offender proceedings was irrelevant to the issue of whether he had been convicted and sentenced for two prior unrelated felonies. There was no error in the trial court's ruling.

ISSUE III

■ Defendant claims that the probable cause affidavit was a conclusory affidavit and did not allow a neutral and detached magistrate to make an independent determination of probable cause. An affidavit which merely states the conclusions of the affiant is insufficient to establish probable cause. *Kinnaird v. State,* (1968) 251 Ind. 506, 515, 242 N.E.2d 500, 505. In the case at bar, however, the essential facts needed to establish probable cause had been within the personal knowledge of the victim, Marian Jackson. She had stated in her affidavit (paragraph 2) that Defendant "threatened [her] with a butcher knife and forcibly engaged in sexual intercourse and fellatio with [her]." R. at 16. These statements by Jackson were not "conclusions," as characterized by the Defendant; rather they were statements of facts from which probable cause could be determined.

■ Assuming, arguendo, that the affidavit had not been sufficient to support a finding of probable cause, there was, nevertheless, no reversible error. The legality of the arrest is of consequence, at this stage of the proceedings, only if it is determined that evidence was obtained in consequence thereof and admitted at the trial. *Williams v. State,* (1973) 261 Ind. 385, 386, 304 N.E.2d 311, 313. There has been no error assigned with respect to any such evidence.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.