**Carmen L. DRAPER, Appellant (Defendant Below),**

**v.**

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 45A03–8910–CR–461.

Court of Appeals of Indiana, Third District.

July 26, 1990.

Transfer Denied Oct. 10, 1990.

Susan K. Carpenter, Public Defender of Indiana, Richard Clarke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Jane A. Morrison, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, J.

Carmen L. Draper appeals her convictions for robbery while armed with a deadly weapon; her appeal presents five issues for our review:

I. Whether the trial court erred when it gave a limiting instruction which focused on the credibility of a particular witness.

II. Whether there was sufficient evidence to support defendant's convictions.

III. Whether the trial court erred in limiting defense counsel's cross examination of a state's witness.

IV. Whether the trial court erred in not granting a mistrial when the prosecutor misstated evidence in her opening statement.

V. Whether the trial court erred in giving a "failure to testify" instruction when it was not explicitly requested by the defendant.

Affirmed.

## I.

### *Instructions on Credibility*

Draper vigorously contends that a limiting instruction given by the court conflicted with a final instruction given by the

**1382**

court regarding the credibility of witnesses, and that the two instructions combined to focus exclusively on the credibility of Starks. Draper cites our opinion in *Cleaveland v. State* (1986), Ind.App., 490 N.E.2d 1140, 1142, where we stated:

> An instruction which intimates an opinion as to the credibility of a witness invades the province of the jury, *Taylor v. State* (1972), 257 Ind. 664, 278 N.E.2d 273, 275. Therefore, instructions dealing with credibility should not have the effect of singling out the testimony of any particular witness, but should apply to all witnesses equally.

Here, the trial court was instructing that any reference to a statement given by Starks was not to be considered as evidence of Draper's guilt or innocence, but it could only be considered by the trier of fact in assessing the credibility of Starks as a witness. The language in *Cleaveland* refers to *final jury instructions*, not limiting instructions on evidence. Trial courts routinely give limiting instructions delineating the narrow purpose for which some evidence may be considered which often requires a specific reference to a particular witness. Such references are both permissible and desirable to promote clarity and avoid confusion.

The final instruction of which Draper complains is a general instruction on the use of inconsistencies in judging the credibility of witnesses. There were numerous witnesses in this trial, and the instruction did not mention Starks specifically, nor did it purport to apply only to her. Our Supreme Court has stated that instructions dealing with the credibility of witnesses should not be worded so as to single out the testimony of any specific witness, but should apply equally to all witnesses. *Hackett v. State* (1977), 266 Ind. 103, 360 N.E.2d 1000, 1003. The instruction in this case does not violate that principle. Therefore, Draper's contention that it singled out Starks has no merit.

Although Draper complains of a conflict between the limiting instruction and the final instruction, she fails to point out that conflict. Upon close examination of the instructions, the only ostensible conflict which is apparent is that the limiting instruction prevents the jury from considering the statement as evidence of guilt or innocence of Draper, while the final instruction generally states that inconsistencies in witness testimony may be considered as evidence of guilt. As pointed out above, the final instruction was a general instruction applicable to all witnesses, while the limiting instruction purported to speak to only one aspect of the testimony of one witness, Starks. We do not believe the jury could have had any problem understanding that the limiting instruction was an exception to the general rule expressed in the final instruction. To restate that exception in the final instruction would have subjected the instruction to the very defect of which Draper complains—a specific reference to Starks.

## II.

### *Sufficiency of the Evidence*

Draper next contends that the evidence was insufficient to support her conviction on each of the three counts of robbery. Upon review of the sufficiency of the evidence, we will not reweigh the evidence or judge the credibility of witnesses. We look to the evidence most favorable to the State, along with all reasonable inferences to be drawn therefrom, to determine if there is substantial evidence of probative value to support the verdict. *Storey v. State* (1990), Ind., 552 N.E.2d 477, 479.

The first count was predicated upon the events in the parking lot of the first bank. Draper argues that there was insufficient testimony as to her identity at the scene, and that there was insufficient evidence that she had a gun at the scene. Draper's contentions have no merit. While the testimony of Starks and Mr. Haugh could be viewed as conflicting with respect to the gun, Mr. Haugh testified that the woman in the back seat of the car pointed a gun at him, and the jury may well have elected to believe him on this issue.

Starks testified that Draper was the woman in the back seat of Mr. Haugh's

car. While the testimony of an accomplice must be highly scrutinized by the fact-finder, an accomplice is a competent witness whose uncorroborated testimony may support a conviction. *Douglas v. State* (1988), Ind., 520 N.E.2d 427, 428.

■■■ The second count involves the robbery of Stella Nikruto. Draper argues that Starks' testimony that she did not discuss her intention to rob Mrs. Nikruto, combined with the inability of Nikruto and eyewitness Aburto to identify her indicate that there was insufficient evidence to support a conviction. Again, Starks testified that Draper was at the scene of the robbery, and Nikruto testified that a second woman asked for twenty dollars from her. The trier of fact could reasonably have concluded from this testimony that Draper asked Mrs. Nikruto for twenty dollars. The fact that Draper did not have the gun here is immaterial. It is not necessary for the State to prove that each defendant committed every element of a crime charged. When two or more people combine their efforts to commit a crime, each person is criminally responsible for all acts committed by his confederates. *Durbin v. State* (1989), Ind.App., 547 N.E.2d 1096, 1098; *Pike v. State* (1989), Ind., 532 N.E.2d 3, 5. Here, the evidence is sufficient to show that Draper and Starks were acting in concert and all of the requisite elements of robbery were present.

■■■ Draper contends that there is no evidence in the record supporting the elements of the crime of robbery or any overt act by Draper from which the trier of fact could infer that Draper was aiding and abetting Starks in the robbery of the Triple A Grocery Store. Draper cites *Harris v. State* (1981), Ind., 425 N.E.2d 154 in support of her contentions. We agree that *Harris* is controlling, but we reach a different conclusion. There, our Supreme Court stated:

> Although it is true that mere presence is not enough to show a person's participation in a crime, such presence may be considered with all other evidence to determine guilt. A trier of fact may infer participation from a defendant's failure

to oppose the crime, companionship with one engaged therein, and a course of conduct before, during, and after the offense which tends to show complicity. While the state must sustain its burden of proof on each element of an offense charged, such elements may be established by circumstantial evidence and the logical inferences drawn therefrom. *Lisenko v. State* (1976), 265 Ind. 488, 355 N.E.2d 841.

*Harris, supra,* at 156. Here, there was ample evidence of companionship between Draper and Starks. Moreover, not only did Draper fail to oppose the crime, but she told Starks to "do what [she] had to do." Finally, Draper drove Starks to the store, gave her the gun either before or after they were in the store, and was speaking with the owner in the back of the store in what the trier of fact may have concluded was an attempt to draw attention away from the events at the cash register. The fact that she stayed in the store to wait on the police as instructed by the store owner does not necessarily indicate nonparticipation in the crime, particularly since the door was barred to her exit.

Accordingly, we hold there was sufficient evidence to support Draper's conviction on each of the three counts of robbery.

### III.

#### *Limitation on Cross Examination*

■■■ Draper next contends that the trial court impermissibly limited the cross-examination of Officer Puntillo, one of the State's witnesses at trial, thereby violating Draper's constitutional right to confrontation of witnesses. We note that the trial judge has discretion to determine the scope of cross-examination, and we will reverse only upon a showing of a clear abuse of that discretion. *Braswell v. State* (1990), Ind., 550 N.E.2d 1280, 1282.

■■■ At trial, during defense counsel's cross-examination of Officer Puntillo regarding the failure of the police to use additional verification procedures to ascertain Draper's identity, the following exchange took place:

BY THE COURT:

I would simply caution Mr. Work that the Court had indicated I was not going to allow her to go into the fact that there was a statement taken from your client, but I think if you continue in this vein, and trying to show he had no reason, I think you are inviting it. And if you do, it is of your making. I don't think it would be fair for the Court.

BY MR. WORK:

You mean to say that I can sit there and let them say what they have, and I can't go into it?

BY THE COURT:

You initiated the whole thing. I am just saying that you may get to a point where—

BY MR. WORK:

I will follow the Court's direction, but I'm doing so under strong protest. Because I think that you are limiting me in a fashion that I have no alternative but succeed [sic] in the line of questioning, in line of what the Court has said. But I do not feel that the Court's interpretation of my line of questioning and examination and the Court's indication that I am opening a door is a proper interpretation of what has transpired here.

BY THE COURT:

I will not tell you what to do, Counsel.

BY MR. WORK:

I understand that.

BY THE COURT:

But I will tell you where I think you are headed, and I would caution you.

(Record, pp. 636–637).

Draper cites the following language in *Crull v. State* (1989), Ind., 540 N.E.2d 1195, 1198 in support of her position:

Counsel need not show that his cross-examination, if pursued, necessarily will bring out facts tending to discredit the testimony in chief. A cross-examiner is entitled to reasonable latitude even though he is unable to state to the court what facts a reasonable cross-examination may develop.

Draper's argument presupposes that her counsel was in fact limited by the trial court on cross examination. Even a cursory examination of the excerpt from the record cited above, however, belies this presupposition. The trial court was not prohibiting defense counsel from continuing his cross examination on that subject. The court was merely cautioning counsel that if he continued in his chosen vein of cross-examination, he would risk opening the door to damaging testimony. That testimony would have been that the police had taken a statement of Draper which obviated the need to secure further evidence of identification, which statement defense counsel sought to keep from the jury at trial. Counsel was free to continue in the same vein of cross examination; the court was merely informing him of the risks attendant to that choice. We therefore hold that the trial court did not impermissibly limit cross examination of Officer Puntillo.

## IV.

### *Prosecutorial Misconduct*

■ Draper next argues that the prosecutor's misstatement of evidence in her opening statement constituted prosecutorial misconduct warranting a grant of a mistrial. In her opening statement, the prosecutor indicated that the evidence would show that the business card taken from Mr. Haugh was found on the person of Carmen Draper. In fact, two police officers testified at trial that the police had recovered the card from the sun visor on the driver's side of Starks' automobile.

In reviewing a claim of prosecutorial misconduct, we first determine, with reference to case law and the Rules of Professional Conduct, whether the prosecutor's actions rose to the level of misconduct. Next, we determine whether the misconduct, under all the circumstances, placed the defendant in a position of grave peril to which she should not have been subjected. The gravity of the peril is not determined by the degree of impropriety of the conduct, but by the probable persuasive effect of the misconduct on the jury's decision. *An-*

*drews v. State* (1989), Ind., 536 N.E.2d 507, 509.

■ Assuming *arguendo* that the statement of the prosecutor in her opening statement constituted misconduct, we hold that the statement did not put Draper in a position of grave peril. In her closing argument, the prosecutor stated that she was mistaken in her opening statement, and corrected herself in accordance with the evidence as it had come out at trial. Further, there was sufficient evidence of identity linking Draper with the Haugh robbery without evidence of the business card. We therefore cannot find that the misstatement had any persuasive effect on the jury's decision.

### V.

#### *"Failure to Testify" Instruction*

■ Draper finally assigns error in the trial court's giving of a "failure to testify" instruction which was not requested by the defendant.[1] Draper acknowledges that she failed to object to the giving of the instruction, but advances the novel argument that her privilege against compulsory self-incrimination found in Article One, Section Fourteen of the Indiana Constitution requires an on-the-record statement of her decision to consent to the instruction.[2]

We note at the outset that Draper's contention is not wholly without merit. The requirement that a decision to consent to the "failure to testify" instruction be placed on the record would ensure that the giving of the instruction was the result of an informed and reasoned decision on the part of the defendant, not just a lapse of attention on the part of harried trial counsel. However, Draper concedes that no Indiana decision has imposed such a requirement. Similarly, we have been unable to locate, and Draper does not cite, any case from any other jurisdiction where such a requirement has been imposed. An examination of our Indiana precedent in the area becomes necessary in order to determine if such a practice is required by Indiana's constitution.

Several Indiana Supreme Court decisions have dealt with the issue of "failure to testify" instructions. In *Gross v. State* (1974), 261 Ind. 489, 306 N.E.2d 371, the Court decided pursuant to the Fifth and Fourteenth Amendments to the Federal Constitution that the *"accused* should *request* an instruction which requires the jury not to draw negative inferences from an accused's silence, or *consent* (either expressly or impliedly) to the giving of the instruction." *Id.* 306 N.E.2d at 372 (emphasis in original). This meant that if the defendant objected, the court was not to give the instruction. *Id.* 306 N.E.2d at 372–373. *Accord, Hill v. State* (1978), 267 Ind. 480, 371 N.E.2d 1303, 1306.

In *Priest v. State, supra* n. 2, our Supreme Court conceded pursuant to the U.S. Supreme Court's decision in *Lakeside v. Oregon, supra* n. 2, that a federal constitutional underpinning no longer supported the holding in *Gross. Priest, supra* n. 2, at 689. However, the court found that the rationale and the procedure set out in *Gross* was still valid under the Indiana Constitution. The Court in *Priest* was faced with an identical instruction as that here, and as in this case, the defendant failed to object to the instruction. The Court stated:

---

1. The following is the instruction given by the trial court:

    The Defendant is a competent witness to testify in his own behalf, and he may testify in his own behalf or not, as he may choose. In this case, the Defendant has not testified in his own behalf, and this fact is not to be considered by the Jury as any evidence of guilt, neither has the Jury any right to comment upon, refer to, or in any manner consider the fact that the defendant did not testify in arriving at your verdict in this case.

    (Record p. 78).

2. Draper concedes that the United States Supreme Court's decision in *Lakeside v. Oregon* (1978), 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 would in all probability preclude such an argument under the federal Constitution, but cites our Supreme Court's decision in *Priest v. State* (1979), 270 Ind. 449, 386 N.E.2d 686, 689 in support of her argument that the privilege against self-incrimination under the Indiana Constitution has been interpreted more broadly than the corresponding provision in the federal Constitution.

Under *Gross*, if the accused does not object to the instruction when proposed, he has communicated to the judge that he has assessed the potential impact of it and consents to its being given. The trial of appellant occurred in 1977 following the decision of *Gross* by this Court in 1974, and, therefore, appellant's trial was governed by the requirements of *Gross*. The failure of appellant to object to the instruction was consent to the instruction of which he now complains and, therefore, no error occurred when it was given.

*Priest, supra* n. 2 at 688–689.

The above language indicates that a defendant's consent to a "failure to testify" instruction is shown by the defendant's failure to object. Implicit is the holding that express consent on the record is not necessary where implied consent by failure to object is present. Accordingly, we hold that there is no requirement under the Indiana Constitution that an accused's consent to a "failure to testify" instruction be placed on the record.

Affirmed.

GARRARD and CHEZEM, JJ., concur.