Randolph McGOWAN, Appellant,

v.

STATE of Indiana, Appellee.

No. 55S04-9209-CR-728.

Supreme Court of Indiana.

Sept. 23, 1992.

Patrick M. Schrems, Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee.

## ON CRIMINAL PETITION
## TO TRANSFER

GIVAN, Justice.

In an opinion published at 592 N.E.2d 1243, the Court of Appeals reversed appellant's conviction of two counts of Defrauding a Financial Institution. The Court of Appeals' reversal was based upon the application of Ind.Crim. Rule 4(B), which concerns a motion for early trial. When such a motion is filed, the court is required to bring the defendant to trial within seventy calendar days unless a delay is caused by appellant's own motion or by his own act.

In a dissenting opinion by Judge Chezem, she opines that it should be required that any motion under the rule should be made in writing. Her observation is that the press of business in the trial courts is so great that trial judges should not be required to keep track of oral motions. Although we agree with Judge Chezem's observation in this regard, we are nevertheless bound by the trial rules presently in place.

Although Crim.R. 4 does not specify that the motion be in writing, Ind. Trial Rule 7(B) provides:

"Unless made during a hearing, or trial or otherwise ordered by the court, an application to the court for an order shall be made by written motion. The motion shall state the grounds therefor and the relief or order sought. The requirement of notice is satisfied by service of the motion."

■ In the case at bar, appellant's oral motion was made during his arraignment on October 9, 1990. Thus, under T.R. 7(B), the motion could have been made orally except for the fact the magistrate who was arraigning appellant instructed him that he must make his motion in writing. Thus, appellant's situation came under that portion of the rule which says "or otherwise ordered by the court."

It is obvious from the record in this case that the statement by the magistrate was understood by appellant and his counsel to require a written motion, which they in fact filed on October 30, 1990. This also brings into play our ruling in *Minneman v. State* (1982), Ind., 441 N.E.2d 673, *cert. denied*, 461 U.S. 933, 103 S.Ct. 2099, 77 L.Ed.2d 307, that when a defendant files a motion for early trial then files a subsequent motion, the time begins to run from the subsequent motion. Thus by both methods the time from which the seventy days should be calculated is October 30, 1990 when appellant filed his written request for speedy trial. The seventy day period, assuming no motions or interference by appellant, would have expired January 8, 1991, two days before appellant was tried on January 10, 1991. Appellant's motion

for discharge, therefore, was filed prematurely, on December 23, 1990, and the trial court was correct in denying it. *See State v. Beckwith* (1947), 225 Ind. 288, 74 N.E.2d 742.

■ Additionally, as recognized by the majority opinion and by the dissenting opinion, appellant so conducted himself with his original counsel that counsel asked permission to withdraw from the case on December 10, 1990. His motion was granted and new counsel was appointed on that day. Following the appointment of new counsel, the court held an *in camera* hearing with the new counsel and the prosecuting attorney. What was said between counsel and the bench is not reported in this record.

However, following the conference, the trial court made an entry resetting the trial for January 17, 1991. Appellant personally objected to setting a further date and insisted that his acquiring new counsel in no way waived his right to a speedy trial. There is nothing in the record to indicate his newly-appointed counsel joined in this objection. As observed by Judge Chezem in her dissenting opinion, it was within the trial judge's prerogative to view the complexity of the case and to decide that seven days was not sufficient time for new counsel to adequately prepare. Thus, the time was extended.

We further note that although the trial judge originally set January 17 for the new trial date, appellant in fact was tried one week earlier on January 10, 1991. Given the state of this record we cannot say the trial court abused its discretion in resetting the trial date after appointment of new counsel, the necessity of which was brought about solely by the conduct of appellant. We therefore hold the Court of Appeals erred in reversing appellant's conviction on this ground.

Appellant next claims the trial court erred when it allowed evidence of an impermissibly suggestive lineup. Appellant contends that a photographic array was shown to bank employees which did not contain his photograph and that no identification was made from that first array. A second photographic array was compiled, which included appellant's photograph from which he was identified. Appellant claims, however, that although Detective Fine testified none of the photographs from the first array were included in the second array, other witnesses testified that some of the photographs from the first array were included in the second.

■ Appellant also contends that in addition other photographs contained in the second array were much younger and the facial characteristics were not similar to his. This Court has held that where the individuals pictured in an array vary in appearance, the array is neither unusual nor impermissibly suggestive. *Wolfe v. State* (1990), Ind., 562 N.E.2d 414; *Neal v. State* (1988), Ind., 522 N.E.2d 912; *Fraylon v. State* (1989), Ind., 542 N.E.2d 559. Although the persons pictured in the array containing appellant's photograph were of varying ages, the difference was slight and each photograph was one of a black man with a thin mustache. Under the above-cited cases, we cannot say that the array was impermissibly suggestive.

■ Appellant also claims the procedure was unduly suggestive in that Detective Fine questioned witness Ratliff as to her selection of photographs. After Detective Fine asked her "are you sure," Ratliff again examined the photographs and said that she in fact was in error and chose appellant's photograph. There is nothing in the record to indicate that Detective Fine made any suggestions to Ratliff other than to ask her if she was sure of her identification. We would further point out that the witnesses all identified appellant during his trial. We see no evidence in this case of improper conduct during the photographic identification.

Appellant contends there was not sufficient probable cause given by Detective Fine for the issuance of appellant's arrest warrant. On August 8, 1990, Detective Fine was involved in the investigation of an attempted shortchange scam at a Subway sandwich shop. He also was involved in the investigation of several similar incidents at the local banks.

An information was filed by the State charging appellant, known only as "Rand," with the crime of attempted theft from the Subway shop. The pertinent portions of this information read as follows:

Det. Sgt. Clarke E. Fine who being duly sworn, upon his oath says that Rand on or about the 9th day of June, A.D. 1990, and in the County of Hendricks in the State of Indiana, did attempt to commit the crime of theft by knowingly or intentionally attempting to shortchange a clerk at the Subway Shop at 11153 W. Washington, Plainfield, Hendricks Co Ind, [sic] which conduct constituted a substantial step toward the commission of the crime of theft, to wit: did numerous times ask for different denominations of change in an attempt to shortchange and defraud the Subway Shop, the same being, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana.

The trial court questioned Detective Fine concerning the facts contained in the information and the identity of "Rand." From this questioning, the trial court found probable cause and ordered an arrest warrant issued. Armed with this warrant, officers entered appellant's apartment and arrested him. Appellant contends the arrest warrant was based solely on conclusions by Detective Fine rather than upon facts.

The incident at the Subway sandwich shop was videotaped. Detective Fine showed the videotape and still photographs from the tape to various witnesses and learned that the man was the live-in boyfriend of Miss Firby Thomas who resided at the address where appellant was arrested. Witnesses had taken a license number from the car driven by the suspect and that plate number was registered to Miss Thomas. This information was contained in Detective Fine's probable cause affidavit which was presented to the trial court.

■ It was after appellant's arrest that the officers learned that his full name was Randolph McGowan. It is true that affidavits which merely state conclusions are insufficient to establish probable cause.

*Thomas v. State* (1983), Ind., 451 N.E.2d 651. However, an affidavit is sufficient for the issuance of an arrest warrant when it is supported by enough underlying facts to allow a judicial officer to make an independent determination as to probable cause. *Hopkins v. State* (1975), 163 Ind.App. 276, 323 N.E.2d 232. The affidavit by Detective Fine sets out the facts deduced from the officer's investigation including the information surrounding the offense at the Subway shop and various witnesses identifying the man as "Rand."

■ Appellant further claims the affidavit was insufficient since he was identified only as "Rand." Indiana Code § 35-33-2-2(a)(2) provides that an arrest warrant shall "specify the name of the person to be arrested, or if his name is unknown, shall designate such person by any name or description by which he can be identified with reasonable certainty." Here there is little doubt that "Rand" was the nickname used by appellant inasmuch as his full first name is Randolph. In view of the other information known to the officers, it was entirely reasonable for the court to issue the warrant based upon appellant's nickname coupled with the other evidence obtained in the investigation. We see no error in the issuance of the warrant.

Appellant claims error occurred when the prosecuting attorney in his opening statement informed the jury they would be viewing a videotape of an alleged scam inside the Subway sandwich shop in Plainfield and that they would hear testimony from witness Gregory Hurst who witnessed the scam taking place. Appellant points out that the videotape was never played nor offered in evidence and Mr. Hurst only saw a black man coming out of the bank and did not witness the transaction.

■ A ruling on opening statements is largely a matter for the discretion of the trial court. An appellate court will not reverse a case because of some irregularity in the statement unless there has been a clear abuse of discretion resulting in prejudice to the accused. *Kalady v. State*

(1984), Ind., 462 N.E.2d 1299. In exercising its discretion concerning alleged misconduct on opening statements, the trial court must determine whether the party making the statement in fact did engage in misconduct and whether such conduct viewed from the totality of the circumstances of the case placed the defendant in a position of grave peril. In determining grave peril, the court must look to the probable persuasive effect of the misconduct on the jury's decision. *Murray v. State* (1982), Ind., 442 N.E.2d 1012.

Without a doubt, the prosecutor erred when he stated that Gregory Hurst had observed the transaction, and he also did not live up to his prediction that the jury would see the videotape. However, in both of these instances, it was the prosecutor who had the potential of looking bad as far as the jury was concerned. The evidence of appellant's guilt is abundant in this case to support the verdict of the jury which was apparently rendered notwithstanding the mistaken comments made by the prosecuting attorney in his opening statement. It has been ruled that this type of conduct does not place the defendant in a position of grave peril. *See Draper v. State* (1990), Ind.App., 556 N.E.2d 1380. We see no reversible error here.

Appellant contends error occurred when on direct examination Detective Fine stated that he received information from people indicating that the suspect he was looking for was "Rand." Appellant objected that such statement was hearsay testimony; however, the court overruled his objection. Fine in fact testified that after showing people the videotape of the suspect he learned that the suspect's name was Rand and that he was the live-in boyfriend of Firby Thomas.

Upon appellant's objection, the State explained it offered the testimony not for the truth of the matter asserted but to explain Detective Fine's further action in locating appellant. The court then admonished the jury to use the testimony only for that purpose. Given such instruction to the jury, it was not error to allow the evidence.

*Williams v. State* (1989), Ind., 544 N.E.2d 161.

Appellant claims the investigating officers erred when they destroyed the first photographic array which did not contain appellant's photograph and from which no identification was made. Appellant argues that the State has a duty to preserve evidence that is expected to play a significant role in his defense and that a heavy burden rests with the State to demonstrate that the destruction of the evidence did not prejudice the defendant, citing *Birkla v. State* (1975), 263 Ind. 37, 323 N.E.2d 645, *cert. denied*, 423 U.S. 853, 96 S.Ct. 99, 46 L.Ed.2d 77.

In *Holder v. State* (1991), Ind., 571 N.E.2d 1250, we held that the State's duty to preserve evidence must be limited to evidence that might be expected to play a significant role in the suspect's defense. Absent a showing of bad faith on the part of the police, the failure to preserve evidence does not constitute a denial of due process of law. *Everroad v. State* (1991), Ind.App., 570 N.E.2d 38. In the instant case, the first photographic array did not contain appellant's photograph and no witness identified any of the photographs as those of the suspect. It is difficult to perceive what possible value such array could have been to appellant. We see no reversible error here.

Appellant contends the trial court abused its discretion in deviating from the presumptive sentence and sentencing him to two eight (8) year terms to be served consecutively. Appellant cites the trial court's finding in this regard, which is as follows: "Court now finds that because of the Defendant's prior six felony convictions .. and of the fact that he was on Probation at the time this offense occurred .. are aggravating circumstances and finds no mitigating circumstances."

Appellant claims that this finding by the trial court is not sufficient to support the enhancement of his offenses and the order that they be served consecutively. We cannot agree with appellant in this regard. The reasons stated by the court are suffi-

cient to support the sentence. *See Jones v. State* (1984), Ind., 467 N.E.2d 681.

We grant transfer and reverse the Court of Appeals. The trial court is affirmed.

SHEPARD, C.J., and KRAHULIK, J., concur.

DeBRULER and DICKSON, JJ., dissent without separate opinion.