**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**PATRICIA CARESS McMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| HAROLD BISHOP, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 49A02-1405-CR-367 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
Cause No. 49G06-1209-FA-61225

**December 23, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issue

Following a jury trial, Harold Bishop was convicted of attempted murder, a Class A felony. Prior to trial, the State destroyed two .45 caliber shell casings found at the crime scene without first allowing the defense to test them. Bishop appeals, asking whether the trial court erred by allowing the State to present expert testimony that both shell casings were fired from the same gun. Concluding the shell casings were "potentially useful evidence" as described by the United States Supreme Court in <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58 (1988), and that no evidence suggests the casings were destroyed in bad faith, we affirm.

## Facts and Procedural History

Bishop developed a friendship with William Cullens as a result of their membership at a local gym. In the spring of 2012, Cullens borrowed $500 from Bishop, and the debt remained outstanding several months later. On August 29, 2012, Bishop angrily approached Cullens at the gym and inquired about the money. The two men took the conversation outside, at which point Bishop acted as if he wished to fight. Cullens told Bishop that he was expecting to receive an annuity payment in the near future and would repay Bishop then.

On the evening of August 31, 2012, Cullens was home with his girlfriend, Yvonne Johnson. Around 10:45 p.m., Johnson decided she wanted to go out for a night on the town. As Johnson and Cullens were walking to Cullens's car, they heard a voice say, "Will, where's my money?" Transcript at 33, 66. Cullens recognized the voice as Bishop's, and Cullens turned to see Bishop raise his arm and point a gun directly at him.

2

Cullens turned and ran. He heard a gunshot and was struck in the back by a bullet, but he continued running and called 911 after he exited the apartment complex.

The State charged Bishop with attempted murder, a Class A felony, and aggravated battery, a Class B felony, but the State later moved to dismiss the aggravated battery charge. The police recovered two .45 caliber shell casings from the parking lot where the shooting occurred. Although a gun was never recovered, the State's forensic scientist determined that the two shell casings were fired from the same gun. On January 30, 2014, the State notified Bishop and the trial court that the casings had been destroyed without consultation with the prosecutor's office or the detective assigned to the case. On February 27, 2014, Bishop filed a Motion to Dismiss Due to Destruction of Evidence or in the Alternative for Exclusion of Evidence. Following a hearing, the trial court denied the motion. At trial, over Bishop's objection, the State presented expert testimony that the two casings were fired from the same gun. The jury found Bishop guilty of attempted murder, and Bishop was sentenced to thirty-five years imprisonment. Bishop now brings this appeal.

Discussion and Decision

I. Standard of Review

Bishop argues the trial court erred by denying his motion to exclude evidence and allowing the State to present evidence that the casings were fired from the same gun, asserting that the State's destruction of the casings violated his due process right to have the State preserve material exculpatory evidence. A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. J.K. v. State, 8 N.E.3d 222, 228

3

(Ind. Ct. App. 2014). A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances or when the trial court has misinterpreted the law. Id.

## II. State's Duty to Preserve Evidence

Bishop contends that the State's failure to preserve evidence relevant to his case violated his right to due process under the United States Constitution.[1] A defendant's due process rights are violated when the State fails to disclose or preserve material exculpatory evidence. See United States v. Agurs, 427 U.S. 97 (1976). For evidence to be constitutionally material, it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." California v. Trombetta, 467 U.S. 479, 489 (1984). When the evidence at issue is material exculpatory evidence, it is irrelevant whether the State's failure to disclose or preserve the evidence was in good or bad faith. Illinois v. Fisher, 540 U.S. 544, 547 (2004).

In contrast, when the evidence at issue is "potentially useful evidence," as opposed to material exculpatory evidence, failure to preserve that evidence does not amount to a due process violation "unless a criminal defendant can show bad faith" on the State's behalf. Arizona v. Youngblood, 488 U.S. 51, 58 (1988). Evidence that is "potentially useful" was described by the Supreme Court as "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have

---

[1] Although Bishop refers to Article 1, Section 12 of the Indiana Constitution at the close of his initial brief and reply brief, he has not raised an independent argument under the Indiana Constitution.

exonerated the defendant." Id. at 57. At the heart of the Youngblood decision was the Court's unwillingness to impose under the Due Process Clause "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." Id. at 58.

Bishop does not assert the State acted in bad faith when it destroyed the shell casings at issue in this case. Thus, the success or failure of his claim depends upon whether the casings were material exculpatory evidence or merely potentially useful.

Bishop contends that loss of the shell casings is significant because it deprived him of the opportunity to test the casings and contradict the State's expert testimony that the casings came from the same firearm. It is quite clear that the destroyed shell casings fall under the category of "potentially useful evidence." The casings did not have "exculpatory value that was apparent before the evidence was destroyed." Trombetta, 467 U.S. at 489. Indeed, the casings were only potentially helpful to Bishop's defense, and Bishop's own argument declares their significance is contingent upon the chance that additional testing would yield a result inconsistent with that of the State's expert. Therefore, Bishop's due process argument must fail without a showing of bad faith.[2]

We also note that even if additional testing would have revealed that the two .45 caliber shell casings came from different guns, such evidence would have only minimal

---

[2] Much of Bishop's argument is founded on his contention that "Indiana has further refined the definition of exculpatory evidence that must be preserved by the State as 'evidence that might be expected to play a significant role in the suspect's defense.'" Appellant's Brief at 5 (quoting McGowan v. State, 599 N.E.2d 589, 595 (Ind. 1992)) (emphasis added). He uses this language as a springboard for his argument that the State should have known he would desire to test the casings and use them as part of his defense. Bishop is incorrect that Indiana has "refined" the test for determining what is "material exculpatory evidence" as it is referred to in Youngblood and related cases. It appears that the language quoted by Bishop originated in the Supreme Court's decision in Trombetta, 467 U.S. at 488, which was in turn relied on by the majority in Youngblood. In no way does that language broaden the sphere of "material exculpatory evidence" or narrow that of "potentially useful evidence."

exculpatory value, if any. Cullens clearly identified Bishop as the shooter, and evidence that the discovered casings were fired from two different guns would not change that fact or even decrease its likelihood. At best, the potential evidence Bishop proposes would indicate that at least one of the casings did not come from Bishop's gun or that he only fired one shot at Cullens, which struck him in the back. But it could also be inferred that Bishop shot at Cullens with two different guns. Thus, from Bishop's perspective, even the <u>potential</u> value of the casings is negligible.

Conclusion

We conclude the two shell casings were "potentially useful evidence" as described by the United States Supreme Court in <u>Youngblood</u> and that no evidence suggests their destruction was carried out in bad faith. Therefore, the trial court did not abuse its discretion by allowing the State to present expert testimony regarding the casings. Accordingly, we affirm.

Affirmed.

BAILEY, J., and BROWN, J., concur.